STATE OF NEBRASKA, APPELLEE, V.
JOHN L. AUSTIN, APPELLANT.

306 N.W.2d 861

Filed June 12, 1981. Nos. 43705, 43706.

Dennis R. Keefe, Lancaster County Public Defender, Don C. Bauermeister, and Jerry Soucie for appellant.

John C. McQuinn, Assistant City Prosecutor, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

John L. Austin, the defendant and appellant herein, appeals to this court from an order of the District Court of Lancaster County affirming his convictions in the municipal court of Lincoln, Lancaster County, Nebraska, finding him guilty of the violation of two separate ordinances of that city, and imposing fines upon the defendant for such violations. In the first complaint filed against him it was alleged in count I thereof that on or about June 18, 1979, he "did dump or deposit refuse at property legally described as the northeast quarter of south half of Lot 17 of the southeast quarter, Township 9 North, Range 6 East to [sic] the Sixth P.M. of Stockwell Subdivision, Lancaster County, Nebraska,. in violation of Lincoln Municipal Code section 8.28.020." In count II of that complaint, it was alleged that on or about June 18, 1979, he failed to keep the above-described property "free from rubbish, trash, junk and or other offensive and unwholesome matter and did permit conditions liable to produce diseases which are conducive to the breeding and existence of rats, mice, flies, mosquitoes, bacteria, and other rodents and insects, all of which conditions constitute a public nuisance," contrary to

§ 8.44.040 of the Lincoln Municipal Code. The second complaint filed against the defendant also contained two counts charging violations of the same sections of the Lincoln Municipal Code as in the first complaint, but alleged that such violations occurred on or about June 22, 1979. The two complaints were consolidated for trial before the Lincoln Municipal Court on October 17, 1979, which court found the defendant guilty as charged under both complaints and fined him the sum of $100 on each count. The defendant then appealed the convictions and sentences to the District Court of Lancaster County, Nebraska, which court sustained the motion of the State to affirm the judgments and sentences imposed by the municipal court, and found that there was a factual basis for so doing and that the sentence imposed in each count was proper and not an abuse of discretion by the trial court. A subsequent motion for a new trial was overruled by the District Court, and the defendant has now appealed to this court. We affirm in part and reverse in part.

The record in this case reveals that the property in question, which was acquired by the defendant in 1955, is approximately 3½ acres in size and is located outside the corporate boundaries of the city of Lincoln, but is within 3 miles of the Lincoln city limits.

At trial it was established that in January of 1979 Austin was notified by the Lincoln-Lancaster County Health Department that certain conditions existing upon his property were causing a health hazard. Bruce Baugh, an environmental sanitarian for the health department, testified that he first visited the property "right after" January 1, 1979, and twice a week thereafter, but there had been no substantial change in the condition of the property. At trial, Baugh described the premises as follows: "There were numerous abandoned autos. There was a large pile of scattered lumber lying on the ground, scattered thereabouts. There was a pool of standing water,

which is for — which would — conducive to mosquito breeding. There was farm equipment, obsolete farm equipment. There was various pieces of commercial equipment. There was various, various pieces of household appliances or household fixtures, such as discarded parts of toilet stools, weeds." When asked whether the condition of the property was conducive as a breeding place for rodents, Baugh responded: "Yes, it would. And the condition of the property is very conducive to the existence and breeding of rodents, mosquitoes, and it was a health hazard. It is a — also could be classified as a public nuisance. The property has been in that — has been in that condition for some time and is very much a — conducive to the existence of rodents. There is ample food supply for rodents and this [sic] conditions on the property offer very good harborage. Excellent harborage."

Also called as a witness at trial was Robert T. Wheeler, code administrator in the inspections division of the city of Lincoln. Wheeler testified that he notified the defendant on several different occasions to clean up the property. He stated that the defendant had informed him that the property would be cleaned up in 6 months, but no action was taken by June 18, 1979. Wheeler also testified to the fact that the defendant's property was not designated a dumping ground by the city of Lincoln. The final witness to testify at trial was the defendant, who appeared pro se in the action before the municipal court. He admitted on cross-examination that he had placed various vehicles and machinery on his property, but gave no testimony as to the date or dates he had done so.

At the conclusion of the trial, Judge Donald R. Grant advised the defendant that the State had sustained its burden of proving that he was in violation of the city ordinances. However, he deferred sentencing the defendant for 3 weeks so that the defendant could clean up the property. Judge Grant stated: "All I'm doing is telling you that if you get this cleaned up,

get this — you can have this stuff all hauled out there to a — away from there and clean this property up, that I will consider that in assessing penalties. If you do not, I will also consider that fact in assessing penalties. And I'm willing to continue this for a three-week period to see if you want to spend your money one way or another way, or as the gentlemen indicated, you may even make some money on it." After 3 weeks, however, the defendant still had failed to clean up the property, and he was subsequently fined $100 on each of the four counts set out in the complaints.

As previously indicated, the defendant appealed the judgments of the municipal court to the District Court, which affirmed the trial court. We note, however, that although the defendant had represented himself in the trial in the municipal court, he was appointed counsel who represented him in the hearing before the District Court.

Defendant's principal contentions in his appeal to this court are: (1) That a primary city does not have the specific power to impose a fine or imprisonment on an individual for depositing or failing to remove old machinery from his property which is outside the corporate limits of the city, but within its 3-mile jurisdictional border, and therefore the courts did not have jurisdiction to convict him under the ordinances of the city of Lincoln, above referred to; and (2) That there was a failure of proof on the part of the State with reference to his convictions for depositing rubbish on his property, as alleged in count I of both complaints.

Appellant challenges the validity of § 8.28.020 of the Lincoln municipal ordinances. That section, which deals with the designation by the city council of "dumping grounds," reads as follows: "The city council, shall, by resolution, designate a place or places, public or private, for the dumping and disposal of garbage, scavenger matter, rubbish, refuse, rubble from demolished buildings or structures, filth, slops, manure,

ashes, offal, human excrement and other offensive or obnoxious substances. It shall also provide a place or places for the burying or disposal of dead animals. It shall be unlawful for any person to dump, deposit or otherwise dispose of any garbage, scavenger matter, rubbish, refuse, rubble from demolished buildings or structures, filth, slops, manure, ashes, offal, human excrement and other offensive or obnoxious substances or bury or dispose of any dead animals within the corporate limits of the city *or within three miles of the limits thereof*, upon any ground, premises or place other than that designated by the city council as herein provided." (Emphasis supplied.)

We note that the power of a Nebraska municipal corporation to make and enforce such ordinances must be authorized by state statute. In the instant case, the city of Lincoln is a city of the primary class and is governed by Chapter 15 of the Nebraska Revised Statutes, two sections of which are directly applicable to the resolution of this appeal. Neb. Rev. Stat. § 15-236 (Reissue 1977) provides for the control of disease by a primary city as follows: "A primary city may make all such ordinances, by-laws, rules and regulations not inconsistent with the general laws of the state as may be necessary or expedient to promote the public health, safety and welfare, including ordinances, by-laws, rules and regulations as may be necessary or expedient to prevent the introduction or spread of contagious, infectious or malignant diseases. *This power and authority is granted to such city in the area which is within the city or within three miles of the city and outside of any organized city or village.* It may create a department of health, make laws and regulations for that purpose, *and enforce all ordinances, by-laws, rules and regulations made as authorized herein as provided in section 15-263.*" (Emphasis supplied.)

Neb. Rev. Stat. § 15-263 (Reissue 1977) defines the enforcement authority granted cities of the primary

class and the penalties which may be imposed on any person found to be in violation of the city ordinances. Section 15-263 provides in pertinent part: "A primary city may make all such ordinances, by-laws, rules, and regulations not inconsistent with the general laws of the state as may be necessary or expedient, in addition to the special powers otherwise granted by law . . . for promoting the public health, safety, convenience, comfort, morals, and general interests and welfare of the inhabitants of the city, and to enforce all ordinances by providing for imprisonment of those convicted of violations thereof at hard labor for a period not to exceed six months *and to impose forfeitures, fines, and penalties not exceeding five hundred dollars for any one offense*, recoverable with costs, and, in the default of the payment thereof, to provide for confinement in the city prison or county jail . . . ." (Emphasis supplied.)

It was pursuant to the specific authority granted by the aforementioned statutes that the city of Lincoln adopted § 8.28.020 of the Lincoln Municipal Code, which has previously been set out in full above and need not be repeated here. We note, however, that the term "refuse," as referred to in § 8.28.020, is defined in § 8.28.010(d) and also in § 8.44.060(c) of the Lincoln Municipal Code to include discarded automobile bodies, automobiles, parts of automobiles, machinery, parts of machinery, and any other waste matter or material not herein designated as garbage which accumulates in the conduct of a household, business establishment, shop or factory of any kind or nature. It is clear that the articles of materials found on defendant's property were "refuse" within the meaning of that term as used in the foregoing sections of the city ordinances.

The defendant was also convicted of violating § 8.44.040 of the Lincoln Municipal Code. Subsection (a) of that ordinance provides as follows: "It shall be the duty of every owner, lessee, tenant or occupant

of any lot or parcel of ground within the city *or within three miles of the corporate limits thereof* to keep said premises owned, leased, or occupied by him free from garbage, refuse, rubbish, brush, trash, junk, old building material, offal, manure, and any other offensive or unwholesome matter, and it shall be unlawful for such owner, lessee, tenant, or occupant of such lot or parcel of ground to permit, keep or maintain thereon any such condition liable to become putrid or injurious to the public health, or any such condition liable to produce disease, or which is conducive to the breeding and existence of rats, mice, flies, mosquitoes, bacteria, or any other rodents or insects. *The maintenance or permitting of any of the foregoing conditions on any such lot or parcel of ground is hereby declared to be a public nuisance and shall constitute a misdemeanor punishable as hereinafter provided in this code."* (Emphasis supplied.)

It is the general and well-established rule that ordinances and statutes are presumed to be constitutional, and that their unconstitutionality must be clearly established; and further that courts will not pass upon a question of constitutionality unless it becomes necessary to do so. *Aschenbrenner v. Nebraska P.P. Dist.*, 206 Neb. 157, 291 N.W.2d 720 (1980); *State ex rel. Douglas v. Nebraska Mortgage Finance Fund*, 204 Neb. 445, 283 N.W.2d 12 (1979); *Metropolitan Utilities Dist. v. City of Omaha*, 171 Neb. 609, 107 N.W.2d 397 (1961); *United Community Services v. The Omaha Nat. Bank*, 162 Neb. 786, 77 N.W.2d 576 (1956). Construed in this context, we are convinced that the ordinances under which the appellant was charged were adopted under a specific grant of authority from the Legislature as embodied in the aforementioned statutes. *Chase v. County of Douglas*, 195 Neb. 838, 241 N.W.2d 334 (1976); *Jacobs v. City of Omaha*, 181 Neb. 101, 147 N.W.2d 160 (1966); *Christensen v. City of Fremont*, 45 Neb. 160, 63 N.W. 364 (1895). It is clear that the City of Lincoln was

given specific powers to control and regulate the disposition of refuse within the city and within a 3-mile area outside the corporate limits in order to promote the public health and prevent the spread of disease. In addition, § 15-263 clearly provides the city with authority to enforce said ordinances through the imposition of fines and other specified penalties.

The evidence, as revealed in the record and adduced as testimony at trial, clearly establishes that the appellant is the owner of land which is located within the 3-mile jurisdictional boundary outside the corporate limits of the city of Lincoln, which land was not a designated dumping ground for the city. The evidence also establishes that there exists on the property certain articles of refuse and other conditions which are favorable to the breeding of rodents, mosquitoes, and bacteria; that the conditions described on said property create a health hazard to the community; and that the appellant was given ample time to correct conditions after he received notice from the Lincoln-Lancaster County Health Department. It was only after appellant's repeated failure to clean up his property that he was penalized by the trial court.

The record indicates that the ordinances promulgated by the city of Lincoln are reasonably related to the control and prevention of disease. We conclude that the provisions of §§ 8.28.020 and 8.44.040 are clearly applicable and enforceable within the 3-mile zone outside the city's corporate limits under the power granted to the city by § 15-236.

We now address the question of the sufficiency of evidence presented at the trial to sustain the conviction of the defendant on the charges contained in the four counts in the complaints filed against him. We have no trouble in finding that the evidence was sufficient to sustain his conviction on the counts of failing to remove the refuse under § 8.44.040, as it is clear

that the "refuse" was discovered on the property on both June 18, 1979, and June 22, 1979, on which dates the property was actually inspected by the city official. However, we have more difficulty with reference to the charges contained in the complaints in which it is alleged that on both of the aforesaid dates the defendant dumped or deposited refuse on the property. A careful review of the record in this case convinces us that there is no evidence whatsoever in the record to sustain the allegation that even "on or about" the dates mentioned the defendant dumped or deposited such refuse on the property. It is true that the record reflects admissions on the part of the defendant that after his return from the Army and his purchase of the property in question, he had brought automobiles and other various articles onto the property, and perhaps had even moved their location from time to time on the property; but nowhere did he admit, nor was any evidence adduced, with reference to the date or dates this was done; nor does the evidence in any way establish that the "dumping or depositing" was done on or about June 18, 1979, or on or about June 22, 1979, as alleged in the complaints. That being so, we are convinced that the State has not established by sufficient evidence what it has alleged in count I of its complaints; and, therefore, the convictions of the defendant for violating § 8.28.020, and the sentences imposed by the court thereafter for such violations, must be vacated and set aside. Defendant's convictions and sentences with references to count II of the complaints, involving § 8.44.040, are sustained.

AFFIRMED IN PART, AND IN PART REVERSED.

CLINTON, J., participating on briefs.