STATE OF NEBRASKA, APPELLEE, V.
JASON E. VANACKEREN, APPELLANT.

639 N.W.2d 112

Filed February 15, 2002.   No. S-01-152.

James Martin Davis for appellant.

Don Stenberg, Attorney General, and Susan J. Gustafson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Jason E. VanAckeren was convicted in the Madison County Court of contributing to the delinquency of a child under Neb. Rev. Stat. § 28-709 (Reissue 1995). He was sentenced to imprisonment for 1 year and ordered to pay costs of $387.98. VanAckeren appealed to the Madison County District Court, which affirmed the conviction and sentence. VanAckeren appealed the district court's order and filed a petition to bypass, alleging that § 28-709 was unconstitutional as applied to him. We granted the petition and moved the case to our docket pursuant to Neb. Rev. Stat. § 24-1106 (Reissue 1995).

## FACTUAL BACKGROUND

In 1999, VanAckeren, a married 28-year-old teacher at Norfolk Catholic High School, entered into a sexual relationship with K.P., a 15-year-old sophomore student at the school. K.P. knew VanAckeren as a teacher and babysat frequently for his family.

The events relevant to VanAckeren's conviction began on April 10, 1999. K.P. was babysitting VanAckeren's child at

VanAckeren's home in Norfolk. K.P. later took the child to the child's grandmother's house after the grandmother called and requested that K.P. do so. K.P. then returned to her own home. At approximately 1:30 a.m., VanAckeren telephoned K.P. and asked her why she was not at his home when he arrived. VanAckeren then began discussing sexual subjects with K.P. and told K.P. she was "hot." He asked her to come to his house because his wife was not there, but K.P. declined the invitation.

On April 18, 1999, VanAckeren called K.P. at home from his cellular telephone and asked her to meet him at a truckstop at the edge of Norfolk. K.P. drove to the truckstop and parked her car there at approximately 8 p.m. She got into VanAckeren's van and they drove outside of Norfolk, where they stopped on a country road. VanAckeren kissed K.P. and performed oral sex on her. K.P. then performed oral sex on VanAckeren. They returned to the truckstop, and K.P. drove home at approximately 9:30 p.m.

At 1 a.m. on April 24, 1999, VanAckeren called K.P. at her friend's house where she was spending the night. He asked K.P. to come to his house because his wife was not there. VanAckeren told K.P. he was "horny and he could make [her] feel good." K.P. exited through the window of her friend's house at approximately 1:30 or 2 a.m. and "got a ride with some guys" who drove her to VanAckeren's home. After she arrived, VanAckeren kissed her and she performed oral sex on him.

Between April 29 and May 19, 1999, VanAckeren also sent at least 18 e-mail messages to K.P. He composed and mailed some of the messages during school hours from school computers. VanAckeren's language in the e-mails was sexually suggestive, with references to K.P. as "miss hotty," "good lookin," "hot one," "miss nice ass," and "sweet cheeks." He told her that she was beautiful and that she made him "horny everytime" he saw her. VanAckeren repeated such phrases as "[I] think about you all of the time," "I love you," "I can't wait to see you," and "I am so whipped." He often reminded K.P. of his promise to divorce his wife and marry K.P. in 5 years, when she would be 21 years old.

On May 6, 1999, VanAckeren told K.P. in an e-mail, "[I]t seems like forever since we have been together. [I] miss your great lips." In another e-mail dated May 13, 1999, VanAckeren

referred to his prior encounter with K.P. on April 18 and discussed another planned meeting during the weekend of May 14 and 15. He wrote:

> You really owe me a little sompen [sic], sompen [sic] for all of these e-mails I send to you. We need to get together soon, I am really getting horny thinking about you all of the time! We need to meet this weekend, girly. We need to plan it and take care of a little bidness [sic]. Damn, you look good today, but that doesn't surprise me. I don't care what it takes, but we have to meet sometime. We can always do the [truckstop] thing. That's not all bad you know. I will remember to bring a blanket.

The meeting did not occur that weekend, but VanAckeren continued to write K.P., telling her on May 17, 1999, "I still love ya, even though you did stand me up." On May 19, VanAckeren, in another e-mail, wrote, "I would like to see you either Saturday night or Monday night . . . . We could do the [truckstop] thing for sure on one of those nights."

VanAckeren did not limit his discussions with K.P. about sexual matters to e-mail messages. VanAckeren continued the sexual dialogue with K.P. during the schoolday and on the telephone.

On May 28, 1999, K.P.'s parents found two of VanAckeren's e-mail messages at their home and notified police. On June 4, the deputy county attorney for Madison County filed a formal complaint in Madison County Court, alleging that VanAckeren violated § 28-709 (contributing to the delinquency of a child). VanAckeren pled not guilty to the charge on July 6. On April 12, 2000, VanAckeren filed two motions to quash the prosecution against him. In the first motion, VanAckeren alleged that § 28-709 was unconstitutional on its face or as applied to him. The second motion alleged certain defects in the form of the information and the manner in which VanAckeren's offense was charged. A hearing on the motions was held on May 11, and the county court overruled both motions on June 15.

Trial was held in Madison County Court on July 24, 2000. The county court entered its order on August 3. In it, the court determined that § 28-709 was constitutional on its face and as applied to VanAckeren. The court further found VanAckeren guilty of contributing to the delinquency of a child. On September 7,

VanAckeren was sentenced to imprisonment for 1 year and ordered to pay costs of $387.98.

VanAckeren appealed to the Madison County District Court, which held a hearing on his appeal on January 11, 2001. VanAckeren asserted, in part, that the county court erred in (1) denying his motions to quash and (2) finding that § 28-709 was constitutional on its face and as applied to him. The district court entered its order on January 18. The court found that VanAckeren waived his facial challenge to the constitutionality of the statute because he did not file his motions to quash before entering a plea of not guilty. The court also determined that VanAckeren's challenge to the constitutionality of the statute as applied was without merit. Accordingly, the district court affirmed the county court's ruling. VanAckeren appealed and filed a petition to bypass, which we granted.

## ASSIGNMENT OF ERROR

VanAckeren asserts, rephrased, that the district court erred in affirming the county court's determination that § 28-709 was constitutional as applied to him under the facts of this case.

## STANDARD OF REVIEW

Determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach an independent conclusion. *State v. Beyer*, 260 Neb. 670, 619 N.W.2d 213 (2000). Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. *Id.*

## ANALYSIS

VanAckeren argues that § 28-709 is unconstitutionally vague as applied to him. The statute states:

(1) Any person who, by any act, encourages, causes, or contributes to the delinquency or need for special supervision of a child under eighteen years of age, so that such child becomes, or will tend to become, a delinquent child, or a child in need of special supervision, commits contributing to the delinquency of a child.

(2) The following definitions shall be applicable to this section:

(a) Delinquent child shall mean any child under the age of eighteen years who has violated any law of the state or any city or village ordinance; and

(b) A child in need of special supervision shall mean any child under the age of eighteen years (i) who, by reason of being wayward or habitually disobedient, is uncontrolled by his parent, guardian, or custodian; (ii) who is habitually truant from school or home; or (iii) who deports himself so as to injure or endanger seriously the morals or health of himself or others.

(3) Contributing to the delinquency of a child is a Class I misdemeanor.

VanAckeren argues that his "conduct is not clearly proscribed in the statute" and that his "fate rests solely on the moral beliefs of the fact finder." Brief for appellant at 13-14. VanAckeren maintains that the definition of a "child in need of special supervision" in § 28-709(2)(b)(iii) is unconstitutionally vague in its inclusion of "any child under the age of eighteen years . . . who deports himself so as to injure or endanger seriously the morals or health of himself or others." VanAckeren believes his "conduct is a severe breach of professional ethics," but he argues that "the question remains as to whether such conduct is a crime." Brief for appellant at 5.

Before we can address the merits of VanAckeren's claim, we must first determine whether he has standing to challenge the constitutionality of the statute on vagueness grounds. The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *State v. Caddy*, 262 Neb. 38, 628 N.W.2d 251 (2001); *Beyer, supra*. To have standing to assert a claim of vagueness, a defendant must not have engaged in conduct which is clearly prohibited by the questioned statute and cannot maintain that the statute is vague when applied to the conduct of others. *Beyer, supra*. The test for standing to assert a vagueness challenge is the same whether the challenge asserted is facial or as applied. *Id.*

The question is whether the record shows that VanAckeren "engaged in conduct which is clearly prohibited by

the questioned statute." See *State v. Beyer*, 260 Neb. 670 9, 619 N.W.2d 213, 220 (2000). Section 28-709 prohibits an· r-son from engaging in conduct that "encourages, causes, o.·，· ·-tributes" to a child's becoming or tending to become eit῾῾ a "delinquent child" under § 28-709(2)(a) or a "child in need of special supervision" under § 28-709(2)(b).

### DELINQUENT CHILD

Section 28-709(2)(a) defines "[d]elinquent child" as "any child under the age of eighteen years who has violated any law of the state or any city or village ordinance." K.P. was under the age of 18 at all times relevant to VanAckeren's conviction. Her date of birth is April 20, 1983. On April 18, 1999, the date of the encounter at the truckstop, K.P. was 15 years old; on April 24, the date of the encounter at VanAckeren's home, she was 16 years old.

The uncontroverted evidence in this case shows that K.P. violated a Nebraska state law as a result of VanAckeren's encouragement. In his April 18, 1999, telephone call, VanAckeren asked K.P. to meet him at a truckstop at the edge of Norfolk. K.P. testified, and the county court found, that on April 18, K.P. drove without a driver's license on the public streets to meet VanAckeren at the truckstop. This violated Neb. Rev. Stat. § 60-484 (Reissue 1998) as it existed in 1999, which stated that "no resident of the State of Nebraska shall operate a motor vehicle upon the alleys or highways of the State of Nebraska until the person has obtained an operator's license for that purpose." The record shows that K.P. had a school permit which allowed her to drive "for the sole purpose of transporting [herself] or any family member who resides with [her] to attend school." See Neb. Rev. Stat. § 60-4,124 (Reissue 1998). By driving to a truckstop at 8 p.m. on April 18, K.P. was not "attend[ing] school," and thus was violating § 60-4,124.

The record shows that VanAckeren's invitations also caused K.P. to violate a "city or village ordinance." See § 28-709(2)(a). K.P. testified that on April 24, 1999, she was spending the night at a friend's house in Norfolk. After a 1 a.m. telephone call from VanAckeren asking her to come to his house, K.P. "snuck out the window" of her friend's home "around 1:30 or 2" in the

morning to meet VanAckeren. K.P. acknowledged that she "got a ride with some guys" and traveled the public streets in Norfolk to reach VanAckeren's home. The county court found that K.P.'s actions violated the city curfew in Norfolk, § 14-318(a) of the Norfolk Municipal Code, which prohibits

> any person under the age of eighteen (18) years to loiter, idle, wander, stroll, or play in or upon the public streets, highways, roads, alleys . . . or to ride in or upon . . . any automobile, bicycle or other vehicle in, upon, over, or through the streets, alleys, or other public places of the city, between the hours of 10:30 p.m. on Sundays, Mondays, Tuesdays, Wednesdays, and Thursdays and 6:00 a.m. of the following day, and between the hours of 12:00 midnight on Fridays and 6:00 a.m. on Saturdays, and between the hours of 12:00 midnight on Saturdays and 6:00 a.m. on Sundays, unless such person is accompanied by a parent, guardian, or other adult person having the legal care and custody of such minor person, or unless said minor person is upon an emergency errand or legitimate business, directed by his parent, guardian, or legal custodian.

The record establishes that K.P. was under 18 years of age and violated a law of the state and a city or village ordinance. Having done so, she became a "delinquent child" for the purposes of § 28-709. The record is also clear that VanAckeren encouraged K.P.'s delinquency. VanAckeren's requests that K.P. meet him during the evening or in the early hours of the morning for sexual encounters encouraged, caused, and contributed to K.P.'s violations of Nebraska state law and a Norfolk city ordinance.

We find that VanAckeren engaged in conduct clearly prohibited by § 28-709(1). Accordingly, we determine that VanAckeren lacks standing to challenge the constitutionality of § 28-709 on vagueness grounds.

CHILD IN NEED OF SPECIAL SUPERVISION

■ Since VanAckeren's actions caused K.P. to become a "[d]elinquent child" under § 28-709(2)(a), it is unnecessary to address VanAckeren's argument that the definition of a "child in need of special supervision" in § 28-709(2)(b)(iii) is unconstitutionally vague. The Nebraska Supreme Court will not pass upon

the constitutionality of legislation absent a need to do so in order to properly dispose of an action. *State v. Torres*, 254 Neb. 91, 574 N.W.2d 153 (1998). See, also, *DeCoste v. City of Wahoo*, 255 Neb. 266, 583 N.W.2d 595 (1998); *State v. Austin*, 209 Neb. 174, 306 N.W.2d 861 (1981).

## CONCLUSION

For the foregoing reasons, VanAckeren lacks standing to assert a constitutional challenge to § 28-709 on vagueness grounds. His conviction is affirmed.

JUDGMENT OF CONVICTION AFFIRMED.