MICHAEL JACOBSON, APPELLEE, v. SOLID WASTE AGENCY OF NORTHWEST NEBRASKA (SWANN), APPELLANT.

653 N.W.2d 482

Filed November 22, 2002.   No. S-01-602.

Dennis D. King, of Smith, King, and Freudenberg, P.C., for appellant.

Thomas A. Hawbaker, of Law Offices of Thomas A. Hawbaker, and Joe M. Hawbaker for appellee, and, on brief, Michael Jacobson, pro se.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Solid Waste Agency of Northwest Nebraska (SWANN) appeals from a declaratory judgment entered by the district court for Dawes County which determined that Michael Jacobson was not liable to SWANN for solid waste collection, transportation, and disposal service charges.

## BACKGROUND

### PROCEDURAL BACKGROUND

Jacobson, a resident of Gordon, Nebraska, initiated this action by filing a pro se petition for declaratory judgment in the district court for Dawes County. He sought a declaration that he is not obligated to pay solid waste collection, transportation, and disposal charges assessed by SWANN because he does not use or benefit from SWANN's services. In its answer, SWANN denied Jacobson's claim that he does not use or benefit from its services and alleged that Jacobson did not comply with its rules and regulations for opting out of service charge liability.

At a hearing on November 7, 2000, the parties advised the court that Jacobson would be filing a motion for summary judgment challenging the legal validity of the rules and regulations relied upon by SWANN. Jacobson subsequently filed a motion for summary judgment asserting that three specific rules adopted by SWANN on January 21, 1999, were not authorized under the Integrated Solid Waste Management Act, Neb. Rev. Stat. §§ 13-2001 to 13-2043 (Reissue 1997), and violated his rights under the state and federal Constitutions. A hearing on the motion was held on January 31, 2001. The parties offered a stipulation of facts which was received in evidence. Counsel for SWANN then advised the court that the parties had agreed to file an additional stipulation and requested that the matter be deemed submitted on the merits for final disposition. Thereafter, the parties filed a "Stipulation for Submission of Case" which referred to the prior receipt by the court of the factual stipulation and further stated that "the parties agree that this case shall be deemed submitted for a decision on the merits, and the decision of the Court shall be considered a final judgment in this matter."

### STIPULATED FACTS

Jacobson is the sole resident and tenant of real property located at 613 North Ash Street, Gordon, Nebraska. SWANN is a political subdivision created under the Interlocal Cooperation Act, Neb. Rev. Stat. §§ 13-801 to 13-827 (Reissue 1997), and the Integrated Solid Waste Management Act. The city of Gordon, located in Sheridan County, Nebraska, is a member of

SWANN, and Jacobson's residence in Gordon is located within SWANN's jurisdictional area.

SWANN was formed for the purpose of management, collection, disposal, and recycling of solid waste within its jurisdictional area. As part of its official functions, SWANN picks up and disposes of or receives solid waste in each of its member jurisdictions. SWANN provides additional services and benefits within each member jurisdiction, including the provision of dumpsters and solid waste containers, the provision of recycling services, the sponsorship of educational programs and community events dealing with solid waste management, the collection of hazardous materials and paint, the provision of crushed concrete for the use of municipalities, and the provision of special disposal sites and assistance for natural disasters.

Since January 21, 1999, SWANN has regularly billed Jacobson for solid waste collection, transportation, and disposal services at the rate of $14.80 per month. SWANN claims that the sum of $382.29 is due and owing on such billings as of November 1, 2000. Jacobson denies that he utilized the services of SWANN during the period covered by such billings, or at any time. Jacobson claims that he personally collects and transports all of his solid waste to an alternate solid waste landfill owned and operated by the Oglala Lakota Nation. In support of his position, Jacobson produced 13 "receipt[s] of payment" from Oglala Lakota Nation Solid Waste Management in Pine Ridge, South Dakota, bearing dates between April 30, 1999, and January 22, 2001. He also produced a receipt, dated November 23, 1999, from an entity designated as "Solid Waste Mgmt." Some of the receipts describe "bags of trash" or "bags of garbage" in varying or unspecified quantities and further describe amounts paid by Jacobson, presumably for disposal of such items. The receipts also reflect Jacobson's address as "613 N. Ash, Gordon, NE." Although it is not clear from the stipulation of facts whether any of these receipts were ever submitted to SWANN, it is clear that Jacobson has not complied with SWANN's rules and regulations adopted pursuant to § 13-2023. Specifically, Jacobson has not provided the written statement required by SWANN's regulation § 4.05(B), and he has not provided the receipts required by § 4.05(E).

## DISPOSITION BY DISTRICT COURT

Based upon the foregoing stipulated facts, the district court determined that although Jacobson was a " 'solid waste generator,' " SWANN had no authority to "regulate" Jacobson or his solid waste because Jacobson had taken the steps required by § 13-2020(4) to exempt himself from SWANN's charges by providing evidence that he disposed of his solid waste at an alternate facility. The court further held that a portion of SWANN's rules and regulations requiring specific proof to exempt a solid waste generator from SWANN's charges was unreasonable and therefore invalid. Based upon these determinations, the district court concluded that Jacobson was not liable to SWANN for any fees or charges it sought to collect, and entered judgment in favor of Jacobson. SWANN perfected this timely appeal, which we moved to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

SWANN assigns, restated and consolidated, that the district court erred in (1) construing the Integrated Solid Waste Management Act to limit SWANN's jurisdiction and authority to regulate and (2) granting Jacobson's motion for summary judgment as to SWANN's regulation § 4.05.

## STANDARD OF REVIEW

In a case in which the facts are stipulated, an appellate court reviews the case as if trying it originally in order to determine whether the facts warranted the judgment. *J.D. Warehouse v. Lutz & Co.*, 263 Neb. 189, 639 N.W.2d 88 (2002); *Ray Tucker & Sons v. GTE Directories Sales Corp.*, 253 Neb. 458, 571 N.W.2d 64 (1997).

When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *Shirley v. Neth, ante* p. 138, 646 N.W.2d 587 (2002); *Salkin v. Jacobsen*, 263 Neb. 521, 641 N.W.2d 356 (2002).

## ANALYSIS

### APPLICABLE STATUTES AND REGULATIONS

SWANN derives its authority from the Integrated Solid Waste Management Act (hereinafter the Act), enacted in 1992, in which the Legislature expressly recognized that local governments are "best positioned to develop efficient solid waste management programs." § 13-2002(5). The Act requires each county or municipality to provide for disposal of solid waste generated within its jurisdiction. § 13-2020(1). Under the Act, "[t]he governing body of a county, municipality, or agency may make all necessary rules and regulations governing the use, operation, and control of a facility or system." § 13-2020(4). Section 13-2023 grants express authority to pass such regulations and states in relevant part: "A county, municipality, or agency may, by ordinance or resolution, adopt regulations governing collection, source separation, storage, transportation, transfer, processing, treatment, and disposal of solid waste within its solid waste jurisdiction area as necessary to protect the public health and welfare and the environment." It is clear from established case law, as well as from a plain reading of the Act, that a political subdivision such as SWANN is "expressly empowered to establish ordinances regulating the collection and removal of garbage." See *Tracy v. City of Deshler*, 253 Neb. 170, 174, 568 N.W.2d 903, 907 (1997). Accord *Village of Winside v. Jackson*, 250 Neb. 851, 553 N.W.2d 476 (1996).

In *Village of Winside v. Jackson*, 250 Neb. at 856, 553 N.W.2d at 480, we held that under the Act as it was then written, "[a] municipality can impose a garbage fee on only those persons that actually use the garbage services provided." We therefore concluded that a village ordinance which imposed a garbage fee on every occupied residence and business, regardless of whether the resident or business owner chose to use the village garbage system, was contrary to the plain language of the Act and thus invalid insofar as it required payment for services which were not used.

In response to *Village of Winside*, a bill was introduced during the 1997 session of the Legislature to amend the language of § 13-2020 in order to "more clearly define when a premises

is served by a solid waste collection system" and to "ensure that the solid waste systems remain viable." Introducer's Statement of Intent, L.B. 135, Natural Resources Committee, 95th Leg., 1st Sess. (February 26, 1997). The amendment, as initially proposed during the committee's hearing, would have allowed subdivisions which owned and operated solid waste systems to charge a flat fee to all residents by reason of the fact that a waste disposal system was present and available for their use. Additional language, however, was later added to provide an opportunity for a waste generator to opt out of the system. Floor Debate, L.B. 495, 95th Leg., 1st Sess. 8906 (May 30, 1997). The final version of the amendment was incorporated into § 13-2020(4) as follows:

> For purposes of the charges authorized by this section, the premises are served if solid waste collection service is available to the premises or if a community solid waste drop-off location is provided, unless the person who would otherwise be subject to such rates or charges proves to the governing body of the county, municipality, or agency that his or her solid waste was lawfully collected and hauled to a permitted facility. Such proof shall be provided by a receipt from a permitted facility, a statement from a licensed hauler, or other documentation acceptable to the governing body of the county, municipality, or agency.

This amendment creates a rebuttable presumption that premises of a solid waste generator located within an area served by a public solid waste collection and disposal system are "served" by such a system. The generator is therefore subject to the system's charges unless the generator takes the steps necessary to obtain an exemption.

On January 21, 1999, SWANN issued Ordinance/Resolution No. 1999-01, which enacted rules and regulations governing disposal and transportation of solid waste within its jurisdiction. The ordinance recited that the rules and regulations promulgated therein were based upon the authority of the Act and the Interlocal Cooperative Act creating SWANN, for the purposes of the following:

A. Identifying those actions, standards and activities necessary to assure effective solid waste handling and disposal of solid waste within the agency jurisdiction;

B. To follow the direction, standards and requirements of state and federal laws as the same may be set from time to time for management of solid waste;

C. To describe the responsibility of persons generating, storing, collecting and transporting solid waste within the jurisdiction of the SWANN agency.

The rules which are at issue in this action provide as follows:

2.06 <u>PERMITTED FACILITY/PERMITTED LAND-FILL</u> shall mean a landfill approved by the Director of the Nebraska Department of Environmental Quality and shall include that term as set forth under NEB. REV. STAT. §13-2020 and applicable rules and regulations of the state of Nebraska, or a landfill located in any other state which has been approved by that state's Department of Environmental Quality or equivalent governing agency and which landfill is an approved landfill facility under the laws, rules and regulations of that state, also meeting applicable federal standards as well as the standards adopted by that state.

. . . .

4.04 <u>STORAGE/NUISANCE</u>. No person shall be permitted to store or stockpile solid waste within the limits of any municipality located within the jurisdiction of the Agency, when such solid waste would create a nuisance as described in the Nebraska state law, any city or village ordinance governing nuisances within such jurisdiction, and **no person shall store or stockpile solid waste within the limits of such municipality for a period of fourteen (14) days or more.**

4.05 <u>MUNICIPAL SOLID WASTE ACCOUNT LIA-BILITY</u>. All solid waste generators within the limits of any municipality located within the jurisdiction of the Agency shall be subject to and liable for the rates and charges established by the Agency for solid waste collection, handling and disposal by the Agency, except as exempted hereinafter by these rules and regulations.

A. *Exemption from Rates and Charges/Alternate Permitted Landfill, Out of State*. Any solid waste generator within the municipal limits may elect to transport and dispose of such generator's solid waste at a permitted facility located outside the state of Nebraska. So long as the solid waste of such solid waste generator is safely and sanitarily transported by the solid waste generator to a permitted landfill located outside of the state of Nebraska, and so long as such solid waste generator shall further comply with these rules and regulations and provide the Agency with a written statement and receipts as hereinafter described, then such solid waste generator shall be exempt from payment of the rates and charges of the Agency for solid waste collection and disposal during the applicable period.

B. *Written Statement, Receipt, Governing Rules*. The solid waste generator desiring to be exempt from the rates and charges of the Agency shall first provide to the Agency a written statement described herein and be governed as follows:

1. The statement shall set forth the full legal name of the solid waste generator and/or person liable for the solid waste account if such solid waste were collected and disposed by the Agency;

2. The statement shall be signed by the solid waste generator;

3. The statement shall set forth the date when the solid waste generator will cease using the services of the Agency and will commence transporting and disposing of all of the generator's solid waste to a permitted landfill or permitted facility located outside the state of Nebraska;

4. The statement shall acknowledge that the solid waste generator is utilizing an alternate landfill facility and is therefore not permitted, licensed or authorized to use or receive services of the Agency for collection, handling or disposal of solid waste generated by such person;

5. The statement shall provide that the solid waste generator acknowledges that any violation of rules and regulations of the Agency or any breach of the rules and regulations of the Agency including the unauthorized use of the

Agency facilities during such period that the statement is in effect, will subject the solid waste generator to liability for the noncompliance fee as hereinafter set forth;

6. The statement shall further provide that the solid waste generator acknowledges the responsibility to provide the Agency with the "receipts" as required from time to time proving the safe and sanitary transportation and disposal of the solid waste generator's solid waste at a permitted facility located outside of the state of Nebraska.

C. *Written Statement Effective Period.* The foregoing written statement may be executed and provided to the Agency at any time, and shall be effective with regard to exemption for rates and charges commencing the next billing period of the Agency. The statement once filed with the Agency shall be deemed to be an election by the solid waste generator to opt out of the Agency's collection and disposal *services*, and the solid waste generator shall be deemed to remain as a *person* opting out of the Agency's services for collection and disposal until such time as the solid waste generator gives written notice that the generator desires to become a customer of the Agency, or the solid waste generator fails to provide the receipts as hereinafter provided.

D. *Rejoining Agency.* In the event that any person shall have elected to "opt out" of the Agency's jurisdiction, and shall thereafter become a customer of the Agency as provided in paragraph 4.05(C), then such person shall not be eligible to again "opt out" for a period of one year after the solid waste generator has rejoined the Agency as a customer of the Agency.

E. *Receipt.* A receipt from a "permitted facility" shall mean a written receipt from the "permitted facility". The "receipt" shall set forth the solid waste generator's name, address, date of disposal, quantity of disposal, type of waste disposed, the name and an address of the "permitted facility" and shall bear the original signature of the authorized agent of the "permitted facility".

The solid waste generator shall submit at least two (2) receipts monthly from the alternate "permitted facility".

The Agency reserves at all times, the right to reject any receipt or written statement if the same is not prepared and filed with the Agency in accordance with these rules and regulations. Each written statement and receipt shall first be approved by the Agency pursuant to NEB. REV. STAT. §13-2020.

### AUTHORITY TO REGULATE

Although Jacobson stipulated that his residence was located within the geographical jurisdiction of SWANN, he contends that the agency's regulatory jurisdiction does not extend to solid waste that is "inside his own home." Brief for appellee at 5. The district court interpreted SWANN's regulatory jurisdiction as extending only to solid waste which is "discarded" and thus "enter[s] the system." It concluded that solid waste generated by Jacobson did not "enter the system" because Jacobson hauled his waste to an alternate facility as permitted by § 13-2020(4) and that therefore SWANN had no regulatory authority over Jacobson or any solid waste generated at his residence. SWANN contends that this interpretation of its regulatory authority over solid waste is overly restrictive. We agree.

As we noted in *Village of Winside v. Jackson*, 250 Neb. 851, 553 N.W.2d 476 (1996), the Act is designed to provide a comprehensive scheme to control the collection and disposal of solid waste. The Act permits a municipality to adopt ordinances or regulations governing solid waste within its jurisdiction as necessary to protect the public health and welfare as well as the environment. *Id.* See, also, § 13-2023. In *Tracy v. City of Deshler*, 253 Neb. 170, 175, 568 N.W.2d 903, 907 (1997), we recognized as "well settled" the principle that a municipality has an affirmative duty to supervise and control the collection of garbage within its corporate limits.

This court is guided by the presumption that the Legislature intended a sensible rather than an absurd result. *Spaghetti Ltd. Partnership v. Wolfe, ante* p. 365, 647 N.W.2d 615 (2002). The Act specifically assigns the responsibility of regulation and oversight of solid waste to local governing bodies because the Legislature determined that such bodies were in the best position to develop efficient waste management programs. § 13-2002(5).

To impose on local governments the responsibility to regulate solid waste and then not grant them the authority necessary to fulfill their obligations would lead to an absurd result. Accordingly, we conclude that SWANN's regulatory authority extends to all solid waste generated within its area of jurisdiction. Although § 13-2020(4) provides a means by which a resident or business may avoid paying a service fee to a municipality having regulatory jurisdiction under the Act, it does not alter the power to regulate conferred by the Act.

### VALIDITY OF REGULATIONS

Having determined that SWANN had authority to regulate solid waste generated at Jacobson's residence, we must now consider whether it exercised such authority in a lawful manner. As a preliminary matter, we note that while Jacobson challenged the validity of §§ 2.06, 4.04, and 4.05(E) of the rules and regulations promulgated by SWANN in January 1999, the judgment of the district court invalidated only portions of § 4.05 and did not address the validity of §§ 2.06 and 4.04. Jacobson did not file a cross-appeal contending that the district court should have also held §§ 2.06 and 4.04 to be invalid, and we therefore do not consider that issue. See *Wasikowski v. Nebraska Quality Jobs Bd., ante* p. 403, 648 N.W.2d 756 (2002).

All ordinances are presumed to be valid. *Village of Winside v. Jackson, supra*; *Whitehead Oil Co. v. City of Lincoln*, 245 Neb. 660, 515 N.W.2d 390 (1994). However, the power of a municipality to enact and enforce any ordinance must be authorized by state statute. *Village of Winside v. Jackson, supra*; *State v. Austin*, 209 Neb. 174, 306 N.W.2d 861 (1981). As noted by the district court, Jacobson's principal contention is that § 13-2020(4) does not authorize the requirement in SWANN's regulation § 4.05(E) that a solid waste generator submit "at least two (2) receipts monthly from the alternate 'permitted facility'" in order to avoid SWANN's service charges. Where there is a direct conflict between a municipal ordinance and a state statute, the statute is the superior law. *Village of Winside v. Jackson, supra*. However, if the municipal ordinance and state statute in question are not contradictory and can coexist, then both are valid. *Gillis v. City of Madison*, 248 Neb. 873, 540

N.W.2d 114 (1995). A court has a duty to harmonize state and municipal legislation on the identical subject. *Id.*

■ Section § 13-2020(4) authorizes public entities owning or operating solid waste disposal systems to establish rates or charges for their use, to be paid "by each person whose premises are served by the facility or system." The 1997 amendment to this statute added the following language:

> For purposes of the charges authorized by this section, the premises are served if solid waste collection service is available to the premises or if a community solid waste drop-off location is provided, *unless the person who would otherwise be subject to such rates or charges proves to the governing body of the county, municipality, or agency that his or her solid waste was lawfully collected and hauled to a permitted facility. Such proof shall be provided by a receipt from a permitted facility, a statement from a licensed hauler, or other documentation acceptable to the governing body of the county, municipality, or agency.*

(Emphasis supplied.) 1997 Neb. Laws, L.B. 495. The statute is silent as to the frequency with which such proof must be provided in order to exempt a property owner or occupant from service charges. To that extent, the statute cannot be adequately understood from the plain meaning of its language or when considered in pari materia with related statutes, and it is therefore ambiguous. See *Premium Farms v. County of Holt*, 263 Neb. 415, 640 N.W.2d 633 (2002). In construing an ambiguous statute, a court may examine the legislative history of the act in question to assist in ascertaining the intent of the Legislature. *Premium Farms v. County of Holt, supra; Sydow v. City of Grand Island*, 263 Neb. 389, 639 N.W.2d 913 (2002).

The question of how frequently one must provide proof of alternate solid waste disposal in order to avoid liability for charges was specifically discussed during floor debate on the 1997 amendment to § 13-2020(4). The discussion proceeded as follows:

> SENATOR WICKERSHAM: . . . I'm wondering what the duration or the period is to be covered by the receipt or the statement is. For example, if you have weekly billings, do you need to present a weekly receipt? If you have

monthly billings, do you have to present a monthly receipt? . . .

SENATOR BEUTLER: . . . I believe there is a degree of flexibility in the amendment and it would seem to me that that's been left to the parties to work out what is reasonable on a reasonable basis.

. . . .

SENATOR WICKERSHAM: . . . I would assume that the amendment means that if you have a monthly billing period or a weekly billing period that that is the duration of the receipt . . . .

SENATOR BEUTLER: . . . I would certainly think that a monthly requirement would be reasonable. I don't have knowledge of weekly billings, but certainly . . . requiring it on a monthly basis would seem perfectly reasonable, under this amendment, to me.

Floor Debate, L.B. 495, 95th Leg., 1st Sess., 8907, 8909 (May 30, 1997).

From this, we conclude that although the statute uses the singular form of the word "receipt," the Legislature intended that periodic submissions of proof would be necessary in order to avoid payment to a municipal system serving the premises, and that the frequency of such submissions would be determined under a standard of reasonableness. So construed, § 13-2020(4) and § 4.05 of the SWANN ordinance are not contradictory. The validity of § 4.05 therefore depends upon whether it is a reasonable specification of the general proof requirement set forth in § 13-2020(4).

In considering the validity of a regulation, courts generally presume that legislative or rulemaking bodies, in enacting ordinances or rules, acted within their authority, and the burden rests on those who challenge their validity. *Busch v. Omaha Pub. Sch. Dist.*, 261 Neb. 484, 623 N.W.2d 672 (2001); *Village of Winside v. Jackson*, 250 Neb. 851, 553 N.W.2d 476 (1996). To overturn an ordinance on the ground that it is unreasonable and arbitrary or that it invades private rights, the evidence of such facts should be clear and satisfactory. *City of Omaha v. Cutchall*, 173 Neb. 452, 114 N.W.2d 6 (1962). We find no evidence in this stipulated record upon

which we could declare § 4.05 unreasonable or arbitrary and therefore invalid.

As part of a comprehensive scheme to control collection and disposal of solid waste authorized by the Act, § 13-2020(1) requires municipalities to "provide or contract for facilities and systems as necessary for the safe and sanitary disposal of solid waste generated within its solid waste jurisdiction area." With respect to waste generators which utilize its system, SWANN can control the frequency of waste pickup and disposal. Although SWANN cannot require a waste generator to use its system and pay its charges, it is authorized by § 13-2020(4) to require such persons or entities, as a condition of being exempted from liability for such charges, to prove that they are disposing of solid waste through alternate means which are consistent with SWANN's statutory obligation to provide for safe and sanitary disposal of solid waste within its jurisdictional area. Section 4.05 seeks to accomplish this objective by requiring those waste generators electing not to use SWANN's services to provide a written statement that they will use an alternate permitted facility and will not use SWANN's services from and after the date of the statement. Under § 4.05, this election to opt out of SWANN's collection and disposal services is effective until the waste generator either uses SWANN's services or fails to provide proof, consisting of receipts showing that waste is being taken to a permitted facility at least twice monthly.

As noted above, we construe § 13-2020(4) to permit a municipal waste disposal agency to require periodic evidence that a generator not using its system is disposing of waste at an alternate permitted facility on a regular basis. We find nothing in this record upon which we could conclude that requiring such evidence be submitted twice monthly is unreasonable.

We have considered Jacobson's other arguments with respect to the claimed invalidity of § 4.05 and conclude that they are without merit.

## CONCLUSION

For the reasons discussed, we conclude that § 4.05 of the rules and regulations adopted by SWANN in Ordinance/Resolution No. 1999-01 is valid. Jacobson's residence is located within

SWANN's jurisdictional area, and he did not comply with lawful regulatory requirements necessary to exempt himself from SWANN's charges for solid waste collection, transportation, and disposal services. Jacobson's charges were stipulated to be $382.29 as of November 1, 2000. The judgment of the district court is reversed, and the cause remanded to the district court for entry of judgment consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.