784 N.W.2d 921 (2010)
280 Neb. 238
STATE of Nebraska, appellee,
v.
Laura LEBEAU, appellant.
No. S-09-890.
Supreme Court of Nebraska.
July 16, 2010.
*923 Thomas C. Riley, Douglas County Public Defender, and Sean M. Conway for appellant.
Jon Bruning, Attorney General, and James D. Smith, Lincoln, for appellee.
*924 HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
GERRARD, J.
Laura Lebeau was charged with violating an Omaha city ordinance prohibiting telephone harassment. Lebeau filed two motions to discharge on statutory speedy trial grounds. The county court denied both motions to discharge, and the district court affirmed. The primary issue in this case is whether the "intimate partner" exception of Neb.Rev.Stat. § 29-1207(2) (Reissue 2008) applies and, if so, whether the statute is constitutional. We conclude that the exception does not apply; therefore, we reverse the judgment of the district court and remand the cause with directions to dismiss the complaint against Lebeau.

BACKGROUND
Lebeau was charged by complaint on September 17, 2008, with violating Omaha Mun. Code, ch. 20, art. IV, § 20-62 (1996), prohibiting "[t]elephone harassment" of another person. Among other things, § 20-62 makes it unlawful for any person, by means of telephonic communication, to purposefully or knowingly threaten to inflict injury to any person or his or her property or to use indecent or obscene language against such person. And specifically, it was alleged that Lebeau left harassing messages on her ex-husband's answering machine. Lebeau, however, was not arraigned until March 3, 2009. The record before the district court indicates that her appearance on March 3 resulted from her arrest on March 2.
On March 20, 2009, relying on September 17, 2008, as the starting date for the 6-month speedy trial period, Lebeau filed a motion to discharge alleging that her case had not been brought to trial within 6 months of the filing of the complaint, as required by § 29-1207 and Neb.Rev.Stat. § 29-1208 (Reissue 2008). On March 23, 2009, Lebeau filed a second motion to discharge, which added a constitutional challenge. Section 29-1207(2) provides that the time for bringing a defendant to trial runs from the date the indictment is returned or the complaint is filed, "unless the offense is a misdemeanor offense involving intimate partners ... in which case the six-month period shall commence from the date the defendant is arrested on a complaint filed as part of a warrant for arrest." Lebeau argued that the intimate partner exception of § 29-1207(2) did not apply and that even if it did, the exception was unconstitutional.
Following a hearing, the county court denied both motions, and on appeal, the district court affirmed. Lebeau appeals.

ASSIGNMENT OF ERROR
Lebeau assigns, consolidated and restated, that the district court erred in affirming the county court order which had denied her motions to discharge.

STANDARD OF REVIEW
The meaning of a statute is a question of law.[1] When reviewing a question of law, an appellate court resolves the question independently of the conclusion reached by the trial court.[2]

ANALYSIS
Nebraska's speedy trial statutes[3] provide in part that "[e]very person *925 indicted or informed against for any offense shall be brought to trial within six months, and such time shall be computed as provided in [§ 29-1207]."[4] Although the speedy trial act expressly refers to indictments and informations, it is well settled that the act also applies to prosecutions on complaint in the county court.[5] To calculate the time for speedy trial purposes, a court must exclude the day the complaint was filed, count forward 6 months, back up 1 day, and then add any time excluded under § 29-1207(4) to determine the last day the defendant can be tried.[6] And, under § 29-1208, if a defendant is not brought to trial before the running of the time for trial, as extended by excludable periods, he or she shall be entitled to absolute discharge from the offense charged.[7]
In this case, there are no excludable periods under § 29-1207(4); the only issue is when the 6-month speedy trial period began. Ordinarily, in cases commenced and tried in county court, the 6-month period within which an accused must be brought to trial begins to run on the date the complaint is filed.[8] However, the recently amended § 29-1207(2)[9] essentially creates an intimate partner exception to the traditional speedy trial calculations, providing that the 6-month statutory speedy trial period
shall commence to run from the date the indictment is returned or the information filed, unless the offense is a misdemeanor offense involving intimate partners, as that term is defined in section 28-323, in which case the six-month period shall commence from the date the defendant is arrested on a complaint filed as part of a warrant for arrest.

(Emphasis supplied.) And Neb.Rev.Stat. § 28-323 (Reissue 2008), the domestic assault statute, defines intimate partner as "a spouse; a former spouse; persons who have a child in common whether or not they have been married or lived together at any time; and persons who are or were involved in a dating relationship." We note that §§ 29-1207 and 29-1208 have been amended again, effective July 15, 2010,[10] but those changes are not relevant to our analysis.
In this case, the alleged victim was Lebeau's former spouse. And as a result, there is no question that the alleged victim and Lebeau are intimate partners for the purposes of our analysis. But Lebeau argues that she is entitled to absolute discharge of her case because the intimate partner exception of § 29-1207(2) does not toll the speedy trial clock. Specifically, Lebeau asserts that because § 29-1207(2) refers to the definition of "intimate partner" contained in § 28-323, the intimate partner exception must be narrowly construed to refer only to those offenses of which "intimate partner" is an element. And, Lebeau argues, because the involvement of an intimate partner is not an element of telephone harassment under the Omaha Municipal Code, the intimate partner exception does not apply.
Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[11] *926 But a statute is ambiguous when the language used cannot be adequately understood either from the plain meaning of the statute or when considered in pari materia with any related statutes.[12] Here, the language of § 29-1207(2) is ambiguous because the phrase "misdemeanor offense involving intimate partners" could be read to refer only to offenses of which the involvement of an intimate partner is a statutory element or, more broadly, to any misdemeanor offense so long as intimate partners were involved in its commission. As a result, the exception could potentially apply to any misdemeanor offense that just happened to be committed by, or on, an intimate partner.
When a statutory term is reasonably considered ambiguous, we often find it helpful to examine the pertinent legislative history of the act in question to ascertain the intent of the Legislature.[13] The legislative record establishes that the intimate partner exception sought "to discourage perpetrators from evading prosecution by starting the six month period from the point in time a perpetrator is arrested on a warrant rather than from the point in time a prosecutor files a complaint."[14] The Introducer's Statement of Intent describes the apparently common situation which L.B. 623 sought to address:
Often, police arrive at the scene of a misdemeanor domestic violence crime only to learn that the perpetrator has fled. Unable to find and arrest the perpetrator at the time, law enforcement must resort to the issuance of an arrest warrant in order to have legal cause for the arrest. A criminal complaint is then filed by the prosecutor in support of the arrest warrant. Not surprisingly, perpetrators frequently take measures to avoid being located and arrested. If a perpetrator is able to avoid arrest for six months, he or she is rewarded because the charges must be permanently dismissed.[15]
And the testimony before the Judiciary Committee, and statements during the floor debate, certainly made clear that the intimate partner exception was necessary for domestic violence incidents, which, it was explained, were uniquely different from other misdemeanors.[16] And it was explained that L.B. 623 would "simply start" the 6-month speedy trial clock "at the point in time where the defendant is actually arrested for the domestic violence incident and not at the time that the law enforcement officer has the prosecutor file the complaint, at a point in time when the abuser has not been arrested or located."[17]
The principal objective of construing a statute is to determine and give effect to the legislative intent of the enactment.[18] And the legislative history of § 29-1207(2) clearly establishes that the Legislature's intent was to delay the start of the 6-month speedy trial clock when a "defendant is actually arrested for [a] domestic violence incident," and not for any misdemeanor that simply happened to involve intimate partners.[19] Based on the legislative history and, more important, on *927 the fact that the statute refers specifically to the definition of intimate partners in the domestic assault statute, we hold that "misdemeanor offense involving intimate partners," within the meaning of § 29-1207(2), does not encompass any and all misdemeanors in which intimate partners may be engaged. Rather, the exception applies only to those misdemeanor offenses in which the involvement of an "intimate partner" is an element of the offense. To hold otherwise would expand the scope of the intimate partner exception well beyond the Legislature's intent.
And in this case, "intimate partner" is not an element of telephone harassment under § 20-62 of the Omaha Municipal Code. As briefly noted earlier, the elements of telephone harassment under § 20-62 are that a person:
(a) Threaten to inflict injury to any person or to the property of any person;
(b) Use indecent, lewd, lascivious, or obscene language;
(c) Intentionally fail to disengage the connection;
(d) Initiate a connection with the communication system of any recipient after expressed notice that the recipient excluded communication from that person; or
(e) Annoy by anonymous engagement of a line followed by disengagement after answer.[20]
Because telephone harassment neither involves nor includes "intimate partner" as an element, the exception of § 29-1207(2) does not apply to toll the speedy trial clock. Lebeau was charged by complaint on September 17, 2008, and filed her motions for discharge on March 20 and 23, 2009. Because the intimate partner exception of § 29-1207(2) does not apply and there were no excludable periods under § 29-1207(4), the 6-month statutory speedy trial clock expired on March 17, 2009. We conclude that the State did not bring Lebeau to trial within the required time and that she is entitled to absolute discharge.
We note briefly the State's argument that the speedy trial statute does not apply to the prosecution of city ordinances. The State contends that the statute does not apply to a city ordinance because § 29-1207 references only "offense[s]," which are defined by Neb.Rev. Stat. § 28-104 (Reissue 2008) as violations of statutes. Although the speedy trial act expressly refers to indictments and informations, it is well settled that the act also applies to prosecutions on complaint in the county court.[21] And Neb.Rev.Stat. § 25-2701 (Reissue 2008) extends the rules of criminal and civil procedure to the county court. As § 25-2701 makes clear, all provisions of the criminal and civil procedure code govern all actions in the county court. And, if it were not already clear from the occasions in which we considered § 29-1207 in the context of municipal ordinances,[22] we conclude today that § 29-1207 applies to the prosecution of city ordinances. The State's argument is without merit.
Our conclusion that the intimate partner exception of § 29-1207(2) does not apply is dispositive of this appeal. We need not, and do not, address Lebeau's argument regarding the constitutionality of § 29-1207(2).[23]

*928 CONCLUSION
We conclude that the State did not bring Lebeau to trial within the required time and that the county court and district court erred in finding otherwise. We reverse the lower courts' orders denying Lebeau's motion for absolute discharge and remand the matter to the district court with directions to reverse the judgment of the county court and remand the cause with directions to dismiss the complaint against Lebeau.
REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.
NOTES
[1] Harvey v. Nebraska Life & Health Ins. Guar. Assn., 277 Neb. 757, 765 N.W.2d 206 (2009).
[2] Curran v. Buser, 271 Neb. 332, 711 N.W.2d 562 (2006).
[3] Neb.Rev.Stat. § 29-1201 et seq. (Reissue 2008).
[4] § 29-1207(1).
[5] See State v. Karch, 263 Neb. 230, 639 N.W.2d 118 (2002).
[6] See State v. Williams, 277 Neb. 133, 761 N.W.2d 514 (2009).
[7] See id.
[8] See id.
[9] See 2008 Neb. Laws, L.B. 623.
[10] See, Neb. Laws 2010, L.B. 712; Neb. Const. art. III, § 27.
[11] State v. Hense, 276 Neb. 313, 753 N.W.2d 832 (2008).
[12] Id.
[13] See Scofield v. State, 276 Neb. 215, 753 N.W.2d 345 (2008).
[14] Introducer's Statement of Intent, L.B. 623, Judiciary Committee, 100th Leg., 1st Sess. (Mar. 7, 2007).
[15] Id.
[16] See, Judiciary Committee Hearing, L.B. 623, 100th Leg., 1st Sess. (Mar. 7, 2007); Floor Debate, L.B. 623, 100th Leg., 2d Sess. (Feb. 6, 2008).
[17] Floor Debate, supra note 16 at 47.
[18] Kuhn v. Wells Fargo Bank of Neb., 278 Neb. 428, 771 N.W.2d 103 (2009).
[19] Floor Debate, supra note 16 at 47 (emphasis supplied).
[20] § 20-62.
[21] Karch, supra note 5.
[22] State v. Long, 206 Neb. 446, 293 N.W.2d 391 (1980); State v. Schneider, 10 Neb.App. 789, 638 N.W.2d 536 (2002).
[23] See State v. VanAckeren, 263 Neb. 222, 639 N.W.2d 112 (2002).