758 N.W.2d 645 (2008)
17 Neb. App. 80
Dan SCHIEFELBEIN, Appellant,
v.
SCHOOL DISTRICT NO. 0013 OF THURSTON COUNTY, Nebraska, also known as Walthill Public School, a political subdivision of the State of Nebraska, Appellee.
No. A-08-283.
Court of Appeals of Nebraska.
September 30, 2008.
*647 Scott J. Norby, of McGuire & Norby, Lincoln, for appellant.
Jeanelle R. Lust, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., Lincoln, for appellee.
INBODY, Chief Judge, and MOORE and CASSEL, Judges.
CASSEL, Judge.

INTRODUCTION
Dan Schiefelbein appeals from a declaratory judgment that his employment contract as superintendent of School District *648 No. 0013 of Thurston County was validly canceled and validly not renewed. Because we conclude that (1) the district's board of education gave sufficient notice of cancellation of the contract, (2) Schiefelbein did not request a hearing, and (3) the board thereafter took action to cancel the contract, we affirm.

BACKGROUND
The district is a Class III school district under Nebraska law. The district employed Schiefelbein as superintendent pursuant to a written contract the parties signed on April 13, 2006. The contract stated, in relevant part:
1. TERM. [The district] hereby employs [Schiefelbein] for a period of one (1) year, beginning on the first day of July, 2006 and terminating on the 30th day of June, 2007....
....
12. TERMINATION OF EMPLOYMENT CONTRACT. Except as provided herein, this contract may be canceled, not renewed, terminated, or amended by a vote of a majority of [the board] pursuant to procedures described by applicable state statute....
....
13. RENEWAL OF EMPLOYMENT CONTRACT. [The board] will review this Agreement at their regularly scheduled February meeting, and [the board] will provide any notice of its intention to not renew the contract to [Schiefelbein] on or before February 15th. If no notices are given by either party on or before said date, the contract shall, by its own terms, automatically renew for one additional school year.
....
19. NOTICES: Any notices that are required under the terms of this Agreement shall be first class mailed or hand-delivered to the parties at the following addresses....
In January 2007, the board considered but took no action upon Schiefelbein's contract. At the board's meeting on January 8, 2007, the board considered a motion to "offer a one[-]year Superintendent Contract to ... Schiefelbein for school year 2007-2008." Of the board's six members, two voted in favor of the motion and three voted against. One member abstained. The minutes of the meeting then recite that the motion failed. Schiefelbein was present at this vote. No other motions on the subject were made or considered at the January 8 meeting.
In a letter dated March 10, 2007, Schiefelbein notified the board that because he had not received notice of nonrenewal of his contract on or before February 15, his contract had been automatically renewed for an additional year commencing on July 1.
On March 26, 2007, the board passed a resolution to "give notice to ... Schiefelbein of [the board's] intention to consider non-renewal or cancellation of his employment contract." On the same day, the board delivered Schiefelbein a letter that informed him of this action. It also provided reasons for the nonrenewal or cancellation and set forth Schiefelbein's right to a hearing. We describe the content of the notice in more detail in the analysis section below.
Schiefelbein did not request a hearing. On April 9, 2007, the board passed a resolution stating that Schiefelbein "shall have his contract cancelled and not renewed for the 2007-2008 school year." The board notified Schiefelbein of this decision in a letter dated April 10, 2007.
On June 11, 2007, Schiefelbein filed a complaint for a declaratory judgment in the district court. He sought a judgment *649 that his contract had automatically renewed. The district counterclaimed for a declaratory judgment that the contract had been "cancelled and/or non-renewed." On January 10, 2008, the court held a bench trial upon stipulated evidence, and on February 25, the court entered judgment in favor of the district based upon the court's determination that the district had both validly canceled and validly nonrenewed Schiefelbein's employment contract.
Schiefelbein timely appeals.

ASSIGNMENTS OF ERROR
Schiefelbein assigns that the district court erred in (1) finding that the district validly canceled and nonrenewed his employment contract and (2) failing to find that his employment contract continued under the terms of the contract and by operation of law.

STANDARD OF REVIEW
[1] An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. City of Ashland v. Ashland Salvage, 271 Neb. 362, 711 N.W.2d 861 (2006).
[2-4] A suit for damages arising from breach of a contract presents an action at law. In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. Anderson Excavating v. SID No. 177, 265 Neb. 61, 654 N.W.2d 376 (2002). In a case in which the facts are stipulated, an appellate court reviews the case as if trying it originally in order to determine whether the facts warranted the judgment. Jacobson v. Solid Waste Agency of Northwest Neb., 264 Neb. 961, 653 N.W.2d 482 (2002).
[5] The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below. Builders Supply Co. v. Czerwinski, 275 Neb. 622, 748 N.W.2d 645 (2008).

ANALYSIS
We begin by observing that Schiefelbein's declaratory judgment action constituted a collateral attack on the board's action to not renew and to cancel his employment contract. See Bentley v. School Dist. No. 025, 255 Neb. 404, 586 N.W.2d 306 (1998). In Bentley, the Nebraska Supreme Court held that where the applicable statute required notice of nonrenewal to be given by April 15, a notice given on April 16 was untimely, constituted no notice at all, and was a nullity. In that circumstance, there was no valid action that the school board could have taken on the recommendation contained in the notice. As such, the school board did not exercise any judicial function in regard to that notice and a petition in error would not have been appropriate. We now turn to the issues raised in the instant appeal.

Nonrenewal.
[6] Schiefelbein contends that the notice on March 26, 2007, was untimely as a notice of possible nonrenewal, because his contract required that any such notice be given on or before February 15. Under Nebraska's continuing-contract law, the contract of a probationary certificated employee "shall be deemed renewed and remain in full force and effect unless amended or not renewed in accordance with sections 79-824 to 79-842." Neb. Rev.Stat. § 79-828(1) (Reissue 2003). Neb.Rev.Stat. § 79-831 (Reissue 2003) requires that any probationary or permanent certificated employee whose contract of employment may be amended, terminated, *650 or not renewed for the next school year shall be notified in writing on or before April 15 of each year of such possible action on the contract. Schiefelbein argues that because paragraph 13 of his contract, quoted in the background section above, advanced the date for any notice of nonrenewal to February 15, the March 26 notice of nonrenewal was untimely.
We assume, without deciding, that the contractual provision had the effect that Schiefelbein claims. It would then follow that upon the board's failure to give notice of nonrenewal by February 15, 2007, Schiefelbein's contract automatically renewed. The board's attempt to give later notice of nonrenewal would have been ineffective, and the subsequent action of the board could not have constituted a valid final determination of nonrenewal under § 79-831. However, because the board also followed statutory procedures to cancel Schiefelbein's contract, which procedures derive from statutes not relying upon timely notice by April 15 (or some earlier contractual date), we address the parties' arguments regarding cancellation.

Cancellation.
[7] Unlike the statutory provisions concerning nonrenewal, Neb.Rev.Stat. § 79-827 (Reissue 2003) authorizes cancellation of a superintendent's contract "during the school year" for cause. Such cause includes both statutory reasons (loss of certificate, incompetence, neglect of duty, unprofessional conduct, insubordination, immorality, or physical or mental incapacity) and other reasons set forth in the employment contract, as well as any breach of material provisions of the contract. See id.
[8] A school board must provide a superintendent with a written notice prior to considering cancellation of the employment contract, and statutory law prescribes the content of such notice. Section 79-827(2) requires a written notice and specifies only two requirements for its content: (1) The notice must state "the alleged grounds for cancellation of the contract," and (2) it must notify the employee that his or her contract "may be canceled." Because such notice may be given at any time, it is not subject to the notice deadline specified by § 79-831, which pertains only to amendment, termination, or nonrenewal of covered employment contracts.
We now set forth the content of the board's letter of March 26, 2007, which notified Schiefelbein of the possible cancellation. We omit the extensive allegations of cause, because their specific content is not essential to our decision. We emphasize the provisions pertinent to Schiefelbein's argument. The letter began as follows:
This will inform you that [the board] is considering non-renewal and/or cancellation of your contract effective June 30, 2007, as reflected in the motion "we give notice to ... Schiefelbein of [the board's] intention to consider non-renewal or cancellation of his employment contract" as voted upon at the March 26, 2007[,] Special Board Meeting.
(Emphasis supplied.) Following this introductory paragraph, the letter set forth five numbered paragraphs making allegations of cause, including specific factual allegations which we need not detail in this opinion. The letter then continued as follows:
It is for these reasons, and for information which will be provided in greater detail should you request a hearing, that causes [the board] to consider the non-renewal/cancellation of your contract.
Pursuant to statute, you are entitled, as a probationary employee, to have a hearing on the matter by requesting such a hearing in writing within seven *651 (7) days. Your request should be given to me, the Secretary of [the board]. If you request such a hearing, it will not be a due process hearing, but rather will be conducted pursuant to § 79-834. You will be entitled to be represented by the representative of your choice and you will be afforded an opportunity to discuss and explain to [the board] your position with regard to continued employment, to present information, and to ask questions of those appearing on behalf of [the district].
[The board] intends to have a hearing officer and a court reporter to record the proceeding. This matter will remain a confidential employment matter until a hearing is requested and scheduled and the information in this letter will not be released to the public or any news media. Any time prior to the hearing, you have an absolute statutory right to resign if you wish to do so. Additionally, should you request a hearing, the names of any witnesses expected to be called, a summary of their testimony and any documents that may be used will be presented to you along with notice of the time, date and place of the hearing, all which will occur at least five (5) days prior to the hearing.
(Emphasis supplied.)
The notice given to Schiefelbein complied with both requirements of § 79-827(2). First, the letter stated the grounds for the possible cancellation. Schiefelbein does not claim that the letter failed to comply with this requirement. Second, the letter advised Schiefelbein that the board was considering possible cancellation of his contract. Schiefelbein's arguments focus on this requirement.
[9] Schiefelbein's failure to timely request a hearing on the possible cancellation relieved the board of its duty to provide a due process hearing. Upon receiving notice, an employee has 7 calendar days to request a hearing. Id. Schiefelbein did not request a hearing. "If a hearing on ... cancellation ... is not requested within the time provided for in sections 79-824 to 79-842, the school board shall make a final determination." § 79-831. After Schiefelbein failed to make a timely request for hearing, the board took final action canceling Schiefelbein's contract effective on June 30, 2007.
[10] To avoid the conclusion that Schiefelbein's contract was canceled, he first argues that "the written notice ... makes clear that it was exclusively a nonrenewal notice." Brief for appellant at 14. In making this argument, he relies upon the two emphasized portions of the letter that (1) advise that cancellation would become effective on June 30, 2007, and (2) state that the hearing would not be a due process hearing and would be conducted using the informal procedures of Neb. Rev. Stat. § 79-834 (Reissue 2003), which relate only to hearings on nonrenewal of probationary employees.
The district responds that nothing in the statutes precludes it from proposing a cancellation as of a particular date, that the statutes do not require that a notice of possible cancellation of contract address the hearing procedures, and that any ambiguity arising from the reference to § 79-834 was dispelled by other specific references to all of the protections afforded by a due process hearing. We agree. Clearly, as a superintendent, Schiefelbein possessed a working knowledge of the continuing-contract law and was familiar with the applicable statutes. The notice clearly stated that the district was considering both a nonrenewal and a cancellation. The district melded language applicable only to one or the other procedure into a single notice. But we find no indication *652 in the record that Schiefelbein was not aware that cancellation was being proposed.
[11] Section 79-827 imposes no barrier to a school district's making a cancellation effective at a specified date. Section 79-827(1) states that the contract "may be canceled or amended by a majority of the members of the school board during the school year" for any of a number of specified reasons. Section 79-827(2) empowers the board to notify the employee of possible cancellation if it "determines that it is appropriate to consider cancellation of a... contract during the school year for the reasons set forth in subsection (1)." Both the contemplated effective date of June 30, 2007, and the notice given on March 26 fell within the same school year under Schiefelbein's contract. While the board also had the power to make a cancellation at an earlier dateassuming that it complied with the statutory procedures and the final action of the board took place prior to June 30nothing in the statute precluded specification of an effective date. Notably, Schiefelbein provides no authority for his argument other than the language of § 79-827 discussed above.
[12] Section 79-827 does not require that a notice of cancellation set forth the required procedures relating to a hearing. As we noted above, the initial notice required by § 79-827(2) imposes only two requirements, both of which were satisfied by the March 26, 2007, letter. Neb.Rev. Stat. § 79-832 (Cum. Supp. 2006), which defines and imposes requirements for a "formal due process hearing," clearly contemplates that after the employee responds to the initial notice and requests a hearing, the district will provide additional notification to the employee. Where the employee elects not to request a hearing, such additional notification never becomes necessary.
While the letter does contain the sentence disclaiming a due process hearing and referring to the informal hearing contemplated by § 79-834, when the letter is read in its entirety, it is clear that the particular sentence related only to the board's attempt to simultaneously give notice of possible nonrenewal. The letter also specifies that Schiefelbein would be provided with all of the due process rights enumerated in § 79-832. These arguments may demonstrate that it would have been simpler and more straightforward for the district to have provided two separate notices, one addressing possible nonrenewal and the other pertaining to possible cancellation. However, we find no evidence that Schiefelbein was not aware that cancellation was being proposed in addition to nonrenewal.
Schiefelbein's second argument to avoid cancellation asserts that the board "did not in fact cancel Schiefelbein's contract but merely nonrenewed it." Brief for appellant at 14. This contention primarily relies upon the same arguments we have already rejected. Schiefelbein also argues that the board did not actually take action to cancel the contract. The evidence clearly shows that by majority vote of all members, the board "resolved that ... Schiefelbein shall have his contract cancelled and not renewed for the 2007-2008 school year in accordance with the recommendation of the [b]oard [s]ecretary." While we have assumed that this action could not be valid as a nonrenewal, no legal reason defeats its effectiveness as a cancellation. Although the resolution does not explicitly make the cancellation effective on June 30, 2007, it does so by incorporating the recommendation of the board's secretary, which proposed cancellation effective on June 30.
[13, 14] We reject Schiefelbein's argument that the district's attempt to not *653 renew the contractwhich we have assumed to be ineffectiveprecluded the district from proceeding to cancel the contract. A superintendent remains a probationary employee regardless of length of service. Neb.Rev.Stat. § 79-824(3) (Reissue 2003). For a probationary employee, nonrenewal differs from cancellation in several important respects. While nonrenewal of a probationary employee's employment contract is constrained by mandatory time limits, see § 79-831, cancellation can be undertaken at any time during the school year, see § 79-827. A school board may elect to not renew the contract for any reason it deems sufficient, so long as the reason is not constitutionally impermissible or inconsistent with the continuing-contract statutes. See § 79-828(4). In contrast, the contract can be canceled only for cause. See § 79-827. If a hearing is requested, nonrenewal requires only an informal hearing, see § 79-834, while cancellation mandates a formal due process hearing, see §§ 79-827 and 79-832. In the case before us, the board's notice specified the grounds which it claimed constituted cause for cancellation. Had Schiefelbein requested a hearing on cancellation, the board would have been required to present sufficient evidence to support a cancellation of his contract and judicial review would have been available from an adverse decision. Because he did not request a hearing on cancellation, the board was empowered to make a final determination without presenting such proof.

CONCLUSION
We assume without deciding that a provision of Schiefelbein's contract required any notice of nonrenewal to be given by February 15, 2007, that the board failed to timely do so, that the notice given on March 26 was ineffective as a notice of nonrenewal, and that the contract was automatically renewed for the ensuing year by operation of law. We conclude that on March 26, the board simultaneously gave notice of possible cancellation of the contract, that the notice complied with the statutory requirements, that Schiefelbein failed to timely request a hearing on cancellation, and that the board took the necessary action to cancel the contract. We affirm the judgment determining that Schiefelbein's contract was validly canceled.
AFFIRMED.