Lorenz' assignment of error in regard to the September 2010 will is without merit.

## CONCLUSION

We conclude that the trial court did not err in granting partial summary judgment in favor of the siblings and copersonal representatives in April 2013; in invalidating the March 2011 will; and in granting summary judgment in favor of the siblings and copersonal representatives in May 2013, finding the September 2010 will to be Johanna's final will. Accordingly, we affirm the orders of the Douglas County Court entered on April 24 and May 23, 2013.

AFFIRMED.

———————

HERITAGE BANK, A NEBRASKA BANKING CORPORATION, APPELLANT, V. JAMES A. KASSON AND ROBERTA JANE KASSON, HUSBAND AND WIFE, AND THOMAS F. KASSON, APPELLEES.

___ N.W.2d ___

Filed September 23, 2014.    No. A-13-563.

1. **Declaratory Judgments.** An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute.
2. **Declaratory Judgments: Appeal and Error.** When a declaratory judgment action presents a question of law, an appellate court decides the question independently of the conclusion reached by the trial court.
3. **Judgments: Appeal and Error.** In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong.
4. **Declaratory Judgments: Equity: Appeal and Error.** In appellate review of an action for declaratory judgment in an equity action, the standard of review for an equity case applies.
5. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court.
6. **Evidence: Appeal and Error.** When credible evidence is in conflict on material issues of fact, an appellate court considers and may give weight to the fact the trial court observed the witnesses and accepted one version of the facts over another.

7. **Partnerships.** The existence of a partnership is a question of fact under the evidence.

8. **Partnerships: Proof.** The party asserting the partnership relationship exists has the burden of proving that relationship by a preponderance of the evidence.

9. \_\_\_\_: \_\_\_\_. If the parties' voluntary actions form a relationship in which they carry on as co-owners of a business for profit, then they may inadvertently create a partnership despite their expressed subjective intention not to do so. Intent of the parties to form a partnership is ascertained objectively rather than subjectively, from all the evidence and circumstances.

10. **Joint Ventures.** For a joint venture to exist, there must be an agreement to enter into an undertaking; the parties must have a community of interest in the object of the undertaking and a common purpose in performance, and each of the parties must have an equal voice in manner of performance and control over the agencies used.

11. \_\_\_\_. The mere pooling of property, money, assets, skill, or knowledge does not create a relationship of a joint venture.

12. \_\_\_\_. The primary criterion for existence of a joint venture is that the parties enter into an agreement as principals in the endeavor; therefore, even a close relationship between two parties does not create an implied joint venture.

13. \_\_\_\_. A joint venture can exist only by voluntary agreement of the parties and cannot arise by operation of law.

14. **Joint Ventures: Intent.** The relationship of joint venturers depends upon the legal intent of the parties as determined by examining the facts and circumstances of the case.

15. **Livestock.** A brand on livestock is only prima facie evidence of ownership which may be rebutted.

16. **Livestock: Evidence: Presumptions.** When evidence to the contrary of ownership of livestock is introduced, any presumption of ownership disappears and ownership becomes a question of fact to be determined by the preponderance of the evidence.

Appeal from the District Court for Howard County: Karin L. Noakes, Judge. Affirmed as modified.

Kent E. Rauert and Matthew R. Watson, of Svehla, Thomas, Rauert & Grafton, P.C., for appellant.

Gregory G. Jensen, P.C., L.L.O., for appellees.

Moore, Pirtle, and Riedmann, Judges.

Pirtle, Judge.

## INTRODUCTION

Heritage Bank appeals the order of the district court for Howard County finding James A. Kasson and Roberta Jane

Kasson (the Kassons) did not breach their obligations to Heritage Bank under two promissory notes and did not operate a joint venture or partnership with their son, Thomas Kasson. The district court found that the Kassons were not jointly and severally liable for the financial debts and obligations of Thomas and that the Kassons were entitled to a monetary judgment from Heritage Bank. For the reasons that follow, we affirm.

## BACKGROUND

Heritage Bank is a corporation organized and existing under the laws of the State of Nebraska. The Kassons are husband and wife, and both are residents of Howard County, Nebraska. Thomas is the son of the Kassons and is also a resident of Howard County.

The Kassons and Thomas each individually began banking with Heritage Bank in 2001. The Kassons and Thomas maintained separate financial statements, promissory notes, security agreements, and checking accounts. In the past, Heritage Bank has asked owners engaged in informal partnerships to cosign or guarantee each other's loans. The Kassons and Thomas were not asked to guarantee or cosign for each other's indebtedness to Heritage Bank in this case.

The Kassons and Thomas owned and operated separate farming and livestock operations, though they used the same business practices to buy and sell livestock, buy and sell grain, raise grain, harvest crops, lease pastures and cropland, and market their farm products. They shared some equipment and feed. They also helped each other with work responsibilities.

On or about May 7, 2009, the Kassons executed and delivered to Heritage Bank a promissory note representing a line of credit upon which Heritage Bank agreed to advance various sums, not to exceed $250,000 at any one time. The Kassons agreed to pay interest at a rate of 6.25 percent and to pay all principal and accrued interest on the note on its maturity date, April 1, 2010.

On or about May 7, 2009, the Kassons executed and delivered to Heritage Bank a second promissory note in the

amount of $76,000 with interest at a rate of 6.25 percent per annum. The note required the Kassons to make four annual payments of $18,099.42 beginning April 1, 2010, and one payment of $18,099.44 on April 1, 2014.

Contemporaneously to the execution of both notes, the Kassons entered into two separate commercial security agreements granting Heritage Bank a security interest in certain property owned by the Kassons. Both agreements granted Heritage Bank a security interest in "[a]ll farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements . . ." owned by the Kassons.

Heritage Bank maintained a separate lending relationship with Thomas. Thomas also granted Heritage Bank a similar security interest in "[a]ll farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements . . . " owned by Thomas. In 2009, Heritage Bank denied Thomas an additional operating loan.

Thomas filed a chapter 7 bankruptcy proceeding with the U.S. Bankruptcy Court for the District of Nebraska as it relates to all sums due and owing to Heritage Bank. Thomas was made a party to this action, because it relates to his ownership interest in cattle sold at auction.

In March 2010, the Kassons and Thomas sold the majority of their respective cattle at auction. The Kassons and Thomas counted the number of cattle marked with differently colored ear tags—cattle with white or blue tags belonged to the Kassons and cattle with red or yellow tags belonged to Thomas. The sale of the cattle resulted in two checks issued by a livestock market company in the amounts of $55,529.86 and $65,634.69. Both checks were made payable to "Roberta J Kasson & Heritage/Bank."

The proceeds from the sale were deposited into the Kassons' account with Heritage Bank and apportioned between the Kassons and Thomas according to the number of head they respectively sold. The Kassons retained $80,132.90 for the sale, and $41,031.65 was to be applied to Thomas' lending

obligations with Heritage Bank. During their years of farming, it was customary for the Kassons and Thomas to divide the sales in this manner, regardless of the difference in price per head between "fat cattle," steers, heifers, and calves.

On March 8, 2010, the Kassons attempted to pay Heritage Bank in full for the balance on both promissory notes. The payment was submitted in the form of three checks in the amounts of $6,700, $6,256.74, and $72,000. Heritage Bank refused the tender on both promissory notes. Though the Kassons deposited the proceeds from the livestock sale into their personal account, Heritage Bank unilaterally removed the $80,132.90 sales proceeds and converted the funds into a cashier's check. On May 20, Heritage Bank's president directed the check to be deposited into Thomas' account and applied to Thomas' indebtedness to Heritage Bank.

A dispute arose between the parties as to the proper application of the funds totaling $80,132.90, and the sum was deposited with the Howard County District Court clerk. Heritage Bank brought this action against the Kassons and Thomas. The first two causes of action related to the Kassons' obligations on the promissory notes made payable to Heritage Bank. Heritage Bank's third cause of action requested declaratory relief relating to the $80,132.90.

The Kassons filed an answer and cross-claim alleging Heritage Bank miscalculated a credit on the account of Thomas, which altered the amount due to Heritage Bank from the Kassons.

Trial was held on May 7, 2013. On May 31, the district court ruled in favor of the Kassons, holding that Heritage Bank failed to show the Kassons had breached their duty on either of the promissory notes. The district court also held the Kassons were not jointly and severally liable for the debts of Thomas to Heritage Bank, because the Kassons and Thomas were not engaged in a joint venture or partnership. Thus, the full $80,132.90 deposited with the trial court at the commencement of this action was to be applied to the Kassons' obligations to Heritage Bank, not to any obligation Thomas had to Heritage Bank. Heritage Bank timely appealed.

The district court also ruled on the Kassons' cross-claim, holding that the Kassons failed to demonstrate that Heritage Bank was responsible for any misapplication of proceeds. The Kassons did not appeal this determination.

## ASSIGNMENTS OF ERROR

Heritage Bank asserts the trial court erred in finding that the Kassons and Thomas were not engaged in a partnership or joint venture, in failing to find that the cattle at issue were jointly owned by the Kassons and Thomas, and in finding that the contested funds were to be applied to the Kassons' obligations to Heritage Bank and not to Thomas' outstanding debts to it. Heritage Bank asserts the trial court erred in finding the $80,132.90 represented the balance of the Kassons' obligations to Heritage Bank and was to be considered payment in full.

## STANDARD OF REVIEW

[1] An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. *American Amusements Co. v. Nebraska Dept. of Rev.*, 282 Neb. 908, 807 N.W.2d 492 (2011).

[2] When a declaratory judgment action presents a question of law, an appellate court decides the question independently of the conclusion reached by the trial court. *Vlach v. Vlach*, 286 Neb. 141, 835 N.W.2d 72 (2013).

[3] In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Schiefelbein v. School Dist. No. 0013*, 17 Neb. App. 80, 758 N.W.2d 645 (2008).

[4-6] In appellate review of an action for declaratory judgment in an equity action, the standard of review for an equity case applies. See *OB-GYN v. Blue Cross*, 219 Neb. 199, 361 N.W.2d 550 (1985). On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court. *American Amusements Co. v. Nebraska Dept. of*

*Rev., supra.* But when credible evidence is in conflict on material issues of fact, an appellate court considers and may give weight to the fact the trial court observed the witnesses and accepted one version of the facts over another. *Id.*

## ANALYSIS

*Existence of Partnership
or Joint Venture.*

The district court found the facts did not support Heritage Bank's assertions that the Kassons and Thomas were engaged in a partnership or joint venture. The court noted that although the Kassons and Thomas helped each other in the basic operations of the business and shared some equipment, this was not enough to prove that their businesses were jointly held. The Kassons and Thomas obtained their own loans and tagged their livestock to track ownership, and the court found the evidence supported the claim that they intended to conduct their own separate livestock operations.

[7-9] The existence of a partnership is a question of fact under the evidence. *In re Dissolution & Winding Up of Keytronics*, 274 Neb. 936, 744 N.W.2d 425 (2008). The party asserting the partnership relationship exists has the burden of proving that relationship by a preponderance of the evidence. See *id.* If the parties' voluntary actions form a relationship in which they carry on as co-owners of a business for profit, then they may inadvertently create a partnership despite their expressed subjective intention not to do so. *Id.* Intent of the parties to form a partnership is ascertained objectively rather than subjectively, from all the evidence and circumstances. See *id.*

The evidence shows that the Kassons and Thomas intended to be treated as separate owners of similar property. They obtained separate financing for the operating expenses of their farming operations, and they maintained separate checking accounts, promissory notes, and security agreements. They also owned separate equipment and livestock, obtained separate insurance, and filed separate tax returns. An officer of Heritage Bank acknowledged that the Kassons desired Thomas to stand on his own and that they did not cosign or personally guarantee any of Thomas' loans. The evidence also shows

Heritage Bank treated the Kassons and Thomas as if they were separate entities; if they were a partnership, Heritage Bank would not likely have denied Thomas and approved the Kassons for operating loans during the same time period. Upon our review of the evidence, we find the district court did not clearly err in determining that the Kassons and Thomas were not engaged in a partnership.

On appeal, Heritage Bank also asserts the Kassons and Thomas were engaged in a joint venture in their farming operations, particularly those operations related to livestock production.

[10-12] For a joint venture to exist, there must be an agreement to enter into an undertaking; the parties must have a community of interest in the object of the undertaking and a common purpose in performance, and each of the parties must have an equal voice in manner of performance and control over the agencies used. See *Lackman v. Rousselle*, 7 Neb. App. 698, 585 N.W.2d 469 (1998). The mere pooling of property, money, assets, skill, or knowledge does not create a relationship of a joint venture. *Id*. The primary criterion for existence of a joint venture is that the parties enter into an agreement as principals in the endeavor; therefore, even a close relationship between two parties does not create an implied joint venture. See *id*.

[13,14] Though the Kassons and Thomas assisted one another from time to time, and shared equipment and resources, there is no evidence that they intended to engage in a joint venture. A joint venture can exist only by voluntary agreement of the parties and cannot arise by operation of law. *Evertson v. Cannon*, 226 Neb. 370, 411 N.W.2d 612 (1987). In *Evertson*, the Nebraska Supreme Court stated that the agreement need not be express, but may be implied from the apparent purposes and the acts and conduct of the parties. *Id*. The relationship of joint venturers depends upon the legal intent of the parties as determined by examining the facts and circumstances of the case. *Id*.

Here, the Kassons and Thomas held themselves out to be separate businesses; they obtained separate financing,

maintained separate accounts and records, used different iden-
tifying marks on their cattle, and represented to Heritage Bank
that they desired to be treated separately. Though they shared
equipment and some labor, they maintained separate insur-
ance on their equipment and herds and paid taxes as separate
individuals. We find the district court did not clearly err in
finding that the Kassons and Thomas were not engaged in a
joint venture.

*Jointly Owned Cattle.*

In addition to the assertion that the Kassons and Thomas
were engaged in a partnership or joint venture, Heritage Bank
also asserts the evidence supports a finding that the cattle were
jointly owned. Heritage Bank contends that if the cattle were
jointly owned, one-half of the sale proceeds would be attribut-
able to the Kassons, one-half of the sale proceeds would be
attributable to Thomas, and Heritage Bank would be entitled to
Thomas' share, as a creditor.

Heritage Bank asserts the brands owned and used by the
Kassons and Thomas to mark their cattle are prima facie evi-
dence that they were joint owners of all of the cattle, because
the brands were jointly owned and registered. The evidence
presented from the Nebraska Brand Committee indicates one
brand, identified as "backward C, lazy K," was owned by the
Kassons and Thomas. Another brand, identified as "C-over-
a-quarter-circle," was owned by James, Thomas, and James'
other son. It was undisputed that James' other son had no inter-
est in the cattle sold.

[15,16] While it is true that a brand is prima facie evidence
of ownership, the Nebraska Supreme Court has held that a
"'brand on livestock is only prima facie evidence of owner-
ship which may be rebutted.'" *Broken Bow Prod. Credit Assn.
v. Western Iowa Farms*, 232 Neb. 357, 361, 440 N.W.2d 480,
482 (1989). See, also, Neb. Rev. Stat. § 54-1,107 (Reissue
2010). The Supreme Court held that the statute regarding
ownership of livestock did not create a true presumption of
ownership, but, rather, it shifted the burden of proof. *Id*. The
court stated that when evidence to the contrary of ownership

of livestock is introduced, any presumption of ownership disappears and ownership becomes a question of fact to be determined by the preponderance of the evidence. *Id*.

Here, there was evidence of joint ownership of the two brands, but there was also evidence of how the brands and other identification techniques were used to distinguish the cattle. Though the Kassons and Thomas jointly owned the brands, they testified that Thomas exclusively used the "C-over-a-quarter-circle" to identify his cattle and that the Kassons exclusively used the "backward C, lazy K" to identify theirs. James testified that to him, a brand was an identification mark, not a sign of ownership. Thomas and James testified that they also used differently colored ear tags as an indication of ownership—Thomas' cattle were marked with red or yellow tags, and the Kassons' cattle were marked with white or blue tags. The Nebraska Revised Statutes provide that brands and tags are both satisfactory evidence of ownership. Neb. Rev. Stat. § 54-189 (Reissue 2010).

Upon our review of the evidence, we find that the presumption of ownership created by the jointly owned brands was rebutted by the evidence of how the brands were used, as well as the ear tags that were employed to separate the herds. Therefore, we find that the trial court did not clearly err in finding that the cattle were separately owned.

*Award*.

Heritage Bank asserts that, even if the district court was correct in holding the full $80,132.90 was to be applied to the Kassons' obligation, the court erred in stating that the payment represented "payment in full." Heritage Bank asserts the Kassons would still have an outstanding obligation of $4,823.84 to it after the application of $80,132.90 to their debt. This point was conceded by counsel for the Kassons and Thomas during oral argument.

The evidence shows that on March 8, 2010, the Kassons attempted to pay Heritage Bank in full for the balance on both promissory notes. The payment was submitted in the form of three checks in the amounts of $6,700, $6,256.74, and $72,000. The bank officer testified that Heritage Bank refused

tender of the three checks, totaling $84,956.74, which would have paid off, in full, the Kassons' principal and interest on both notes.

The district court found the Kassons were entitled to a check for $80,132.90 to be applied to their outstanding debt to Heritage Bank. The district court stated that "[t]his satisfies the principal and interest obligations in full as of March 8, 2010, the date [the Kassons] tendered payment. No further interest is awarded to either party."

We affirm the court's determination that $80,132.90 should be applied to the Kassons' note and the determination that no one was entitled to interest. However, we find the evidence is undisputed that the Kassons' remaining balance was $84,956.74. The sum of $80,132.90 received from the Kassons' portion of the cattle sale does not equal the full balance of the note. Thus, we modify the judgment to strike the language of the court's order indicating this constitutes payment "in full."

## CONCLUSION

We find the district court did not clearly err in finding the Kassons and Thomas were not engaged in a partnership or joint venture and, thus, were not jointly and severally liable for Thomas' financial obligations to Heritage Bank. We also find the court did not clearly err in finding the cattle sold at auction were not jointly owned by the Kassons and Thomas. We affirm the award of $80,132.90 to be applied to the Kassons' debt.

AFFIRMED AS MODIFIED.