IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. SENSENBACH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

NANCY SENSENBACH, APPELLANT,

Filed January 10, 2017.    No. A-16-543.

Appeal from the District Court for Hall County: MARK J. YOUNG, Judge. Affirmed.

Vicky A. Kenney, Deputy Hall County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

RIEDMANN and BISHOP, Judges, and MCCORMACK, Retired Justice.

MCCORMACK, Retired Justice.

INTRODUCTION

Nancy Sensenbach appeals her convictions and sentences for possession of methamphetamine, possession of drug paraphernalia, and first-degree criminal trespass. On appeal, Sensenbach argues that the physical evidence supporting her convictions should have been suppressed as a result of an unlawful search and seizure and that she received excessive sentences.

Upon our review, we determine that Sensenbach lacked standing to challenge the search of the residence where the evidence was found. We further find that Sensenbach abandoned the purse in which the incriminating items were located. Finally, we conclude that Sensenbach did not receive excessive sentences. Accordingly, we affirm Sensenbach's convictions and sentences.

BACKGROUND

Prior to July 2015, Sensenbach resided at a duplex house in Grand Island, Nebraska. Her sister, Carolyn Urbom, was the landlord of the property, having been appointed successor trustee after their parents' deaths. Urbom had an informal, verbal rental agreement with Janie Zweifel, Sensenbach's eldest sister. Zweifel paid $500 rent to Urbom per month. In turn, Zweifel allowed Sensenbach and their brother to reside at the house. Zweifel collected $100 apiece in rent from Sensenbach and the brother. According to Zweifel, Sensenbach paid her share of the rent "[m]ost times."

Around July 10, 2015, Urbom sent the residents, including Sensenbach, a notice that they must vacate the property because she was planning to sell the house. Urbom gave Sensenbach, Zweifel, and their brother until August 31, 2015, to vacate the house. Urbom never undertook formal eviction proceedings in a court of law. Zweifel did not pay Urbom rent for the month of September.

Zweifel moved out of the residence by August 24, 2015, but left a few items in the house after that date and was still "cleaning up the apartment." According to Zweifel's trial testimony, Sensenbach was still living at the house and "still had her stuff still there, a lot of stuff" after Zweifel had moved out. On August 24, Sensenbach's brother committed suicide. Zweifel testified that as a result of their brother's untimely death so close to the eviction date, Urbom agreed to allow Zweifel and Sensenbach additional time to move their possessions out of the home. Urbom, however, denied allowing her sisters additional time to move out.

On September 2, 2015, Zweifel returned to the house to "get the rest of my stuff out and mak[e] sure everything was out." Zweifel discovered that Sensenbach was still residing in the house and had locked the doors. A family member who had accompanied Zweifel to the residence called the police. Zweifel informed the police that she and Sensenbach had been evicted. Police spoke with Urbom who confirmed that no one was supposed to be living at the house after August 31. The police told Sensenbach to leave the residence and to take her things.

Later that same evening, Zweifel drove by the residence and observed Sensenbach's truck parked back in the driveway. Sensenbach had again locked the doors to the house. Zweifel called the police.

Zweifel provided her key to the police and advised them that Sensenbach was not allowed to be in the residence. Officers knocked repeatedly and eventually entered the house with Zweifel's key. After the officers entered the house, Sensenbach and a third party came up from the basement stairs. Sensenbach told the police she was allowed to be there, but the officers learned that police had made contact with her earlier in the day and had instructed her to leave the property. Sensenbach was arrested for trespassing. The third party who had been in the house with Sensenbach was permitted to leave. The officer who arrested Sensenbach testified that the third party had a purse with her when she left.

Prior to transporting Sensenbach to jail, the arresting officer asked Sensenbach if she had any property in the house because, due to the trespassing charge, she likely would not be allowed back in the house to retrieve it. Sensenbach told the officer she had a cellphone in a pink case that she wanted. The officer asked if Sensenbach also had a purse, to which Sensenbach replied that

she did not have a purse. The officer located Sensenbach's cellphone on a bed in the basement. Directly next to the cellphone on the bed was a black purse. The officer opened the purse because it was "unclaimed property." Inside the purse, the officer found an ATM card with the name "Nancy Gonce," a pipe, a bag of a white powdery substance later determined to be methamphetamine, and an empty bag with syringes. The evidence at trial demonstrated that Gonce was Sensenbach's former married name. The officer returned to Sensenbach outside the house and asked if the purse belonged to her. Sensenbach denied the purse was hers. Zweifel told officers that the purse was Sensenbach's.

Sensenbach was subsequently charged with possession of a controlled substance, possession of drug paraphernalia, and criminal trespass. Prior to trial, Sensenbach filed a motion to suppress "any and all items of evidence seized by means of a search on or about the 2nd day of September, 2015," as well as all statements Sensenbach made on the day of her arrest. Sensenbach claimed that the search and seizure violated her Fourth, Ninth, and Fourteenth Amendment protections against unreasonable searches and seizures because they were conducted without a warrant and without probable cause.

A hearing was held on Sensenbach's motion to suppress. The arresting officer testified as to the series of events that resulted in Sensenbach's arrest, including the search of the purse. At the end of the officer's testimony, the court overruled Sensenbach's motion to suppress evidence, finding that Sensenbach lacked standing to challenge the search of the house. Sensenbach withdrew the remaining portion of her motion to suppress relating to the statements she made to police.

The matter proceed to a bench trial at which both of Sensenbach's sisters, Urbom and Zweifel, testified. The State also presented the testimony of the officer who made Sensenbach leave the property early in the day on September 2, 2015, and the officer who arrested Sensenbach for returning to the house that evening. During the arresting officer's testimony, Sensenbach renewed her motion to suppress the physical evidence seized from the house. The court took the renewed motion to suppress under advisement, along with the trial evidence.

The court overruled Sensenbach's renewed motion to suppress, again finding that Sensenbach lacked standing because she did not have a reasonable expectation of privacy in the house and because she denied ownership of the purse in which the methamphetamine and drug paraphernalia were found. The court proceeded to find Sensenbach guilty of all three charges. The court ordered a presentence investigation and set the matter for a sentencing hearing.

At the hearing, the court heard argument from both parties. It sentenced Sensenbach to concurrent terms of 18 months' probation for possession of a controlled substance for criminal trespass, as well as 30 days' incarceration as part of the sentence of probation for criminal trespass. The court declined to impose a fine for possession of drug paraphernalia. The court awarded Sensenbach credit for 2 days served.

Sensenbach appeals. Additional facts will be discussed, as necessary, in the analysis section below.

## ASSIGNMENTS OF ERROR

Sensenbach argues that the district court erred in overruling her motion to suppress evidence and imposing excessive sentences.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Tyler*, 291 Neb. 920, 870 N.W.2d 119 (2015). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *Tyler, supra*.

Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach an independent conclusion. *State v. Cushman*, 256 Neb. 335, 589 N.W.2d 533 (1999).

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

## ANALYSIS

### STANDING

Before we can address the merits of Sensenbach's Fourth Amendment claim, we must first determine whether she has standing to challenge the search and seizure. *State v. VanAckeren*, 263 Neb. 222, 639 N.W.2d 112 (2002). Standing is the legal or equitable right, title, or interest in the subject matter of the controversy which entitles a party to invoke the jurisdiction of the court. *State v. Lamb*, 280 Neb. 738, 789 N.W.2d 918 (2010). Capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place. *State v. Baltimore*, 242 Neb. 562, 495 N.W.2d 921 (1993).

In *Baltimore*, the Nebraska Supreme Court held that the defendant lacked standing to challenge the search of the house in which he was arrested. The house belonged to a third party and Baltimore had a key in order to access a garden hose kept inside the house for the purpose of watering an adjacent garden. On the night he was arrested for possession of a controlled substance, Baltimore had entered the house using his key in order to use the bathroom. The court concluded that "Baltimore's connection with [the] house consisted of intermittent entry for a limited purpose and sporadic presence without an unrestricted right of occupancy on the premises." *Id.* at 572, 495 N.W.2d at 928. This limited-purpose entry did not confer a legitimate expectation of privacy in the house on Baltimore and, as such, he lacked standing to challenge the search that resulted in the police finding controlled substances in the house's kitchen.

Similarly here, at the time of her arrest, Sensenbach was permitted to enter the residence for only a limited purpose: moving out. Urbom testified that Sensenbach had been notified that her lease was being terminated as of August 31, 2015. Zweifel testified that Urbom allowed Sensenbach and Zweifel some additional time to move their things out of the house after their brother's death, although Urbom disputed this. It was therefore apparent from the evidence at trial that Sensenbach was aware that she was not allowed to continue living at the house after August 31, and that any reason Sensenbach had to reenter the residence after this date was for the limited purpose of removing her personal property, not for continued habitation.

Because Sensenbach had only temporary entry to the residence for the limited purpose of removing her possessions, she did not have a legitimate expectation of privacy in the house. See *Baltimore, supra*. See, also, *State v. Hodge and Carpenter*, 225 Neb. 94, 402 N.W.2d 867 (1987) (holding that defendants lacked reasonable expectation of privacy in rented premises from which they had since moved and therefore lacked standing to claim Fourth Amendment protection as to such premises, notwithstanding that defendants left some of their possessions in locked attic), *overruled on other grounds, State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999).

In her brief to this court, Sensenbach cites various statutes and cases setting forth the proper legal procedure for a landlord to evict a tenant and reclaim leased premises. Sensenbach argues that because Urbom did not undertake these formal legal steps, Sensenbach retained an interest in the house. However, these civil cases and statutes focus on a landlord and tenant's respective property interests. As stated above, Fourth Amendment protection depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place. *Baltimore, supra*. Because we determine that Sensenbach lacked a privacy interest in the house as explained above, we find the cases and statutes Sensenbach cites regarding property rights and eviction to be unpersuasive.

We conclude that Sensenbach lacked standing to challenge the constitutionality of the search of the house due to her lack of a privacy interest in the property.

ABANDONMENT

We further determine that Sensenbach did not have a privacy interest in the purse in which the methamphetamine and drug paraphernalia was located because she abandoned it.

When individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might otherwise have had. *State v. Vasquez-Arenivar*, 18 Neb. App. 265, 779 N.W.2d 117 (2010). The Fourth Amendment does not protect property that has been voluntarily abandoned. *Vasquez-Arenivar, supra*. This rule applies when a defendant has been legally detained prior to voluntarily abandoning drugs or other property. *Id.*

Here, after Sensenbach was arrested for trespassing, she denied that she had a purse and asked the officer only to retrieve her cellphone. When the officer located the purse with the methamphetamine and drug paraphernalia in it, he asked Sensenbach if the purse was hers and she denied that it belonged to her. Sensenbach forfeited any privacy expectation she may have otherwise had in the purse by her repeated denials. See *Vasquez-Arenivar, supra*. See, also, *United States v. Sanders*, 130 F.3d 1316 (8th Cir. 1997) (holding that defendant's statements to officers

that he did not own bag found on bus on which he was traveling constituted abandonment for purposes of Fourth Amendment). Accordingly, the Fourth Amendment protections against unreasonable searches and seizures do not apply to the purse.

EXCESSIVE SENTENCES

Lastly, Sensenbach argues that she received excessive sentences. Sensenbach points to the fact that she does not have an extensive criminal history and that she is unemployed as reasons why the court should have imposed lesser sentences. We find no merit to this assignment of error.

When imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education and experience, social and cultural background, past criminal record, and motivation for the offense, as well as the nature of the offense and the violence involved in the commission of the crime. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011).

Sensenbach was convicted of possession of a controlled substance other than marijuana, to wit: methamphetamine, a Class IV felony. Neb. Rev. Stat. § 28-416(3) (Supp. 2015). A Class IV felony is punishable by a maximum of two years' imprisonment and twelve months' post-release supervision and/or a $10,000 fine. Neb. Rev. Stat. § 28-105(1) (Supp. 2015). There is no minimum required imprisonment for a Class IV felony, but a minimum of nine months of post-release supervision is required if imprisonment is imposed. *Id.* Sensenbach was also convicted of possession of drug paraphernalia in violation of Neb. Rev. Stat. § 28-441 (Reissue 2008), an infraction. An infraction is punishable by a fine of no more than $100. Neb. Rev. Stat. § 29-436 (Reissue 2008). Lastly, Sensenbach was convicted of first-degree criminal trespass in violation of Neb. Rev. Stat. § 28-520(1) (Supp. 2009), a Class I misdemeanor. A Class I misdemeanor is punishable by zero to not more than one year's imprisonment and/or a $1,000 fine. Neb. Rev. Stat. § 28-106(1) (Supp. 2015). Because Sensenbach's sentences fall within the statutorily provided ranges, we review the sentences imposed only for an abuse of discretion. *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

At the sentencing hearing, Sensenbach's attorney argued for a lenient sentence, pointing to the fact that Sensenbach was 58 years old and had only one prior felony conviction from 2004. Sensenbach's attorney also emphasized to the court that some of the incidents listed in Sensenbach's criminal history in the presentence report were charges that did not result in convictions. The court stated that it would disregard the charges that did not result in convictions for the purpose of sentencing.

The court indicated that it had reviewed the presentence report and considered Sensenbach's age, mentality, education, experience, social and cultural background, past criminal history, motivation for the offense, as well as the nature of the offense and the amount of violence involved in the crimes. The court concluded that Sensenbach suffered from addiction and anger problems. It sentenced Sensenbach to concurrent terms of 18 months' probation for possession of a controlled substance and criminal trespass. The court ordered no fine for possession of drug paraphernalia because of "the costs involved in the action." With respect to the trespass charge, the court concluded that a sentence consisting only of probation would depreciate the seriousness of the criminal conduct and promote disrespect for the law. Accordingly, the court sentenced

Sensenbach to 30 days' incarceration on the count of trespass as part of the term of probation, and awarded Sensenbach credit for 2 days served.

The record reveals that the court considered the appropriate and required factors in imposing the sentences on Sensenbach. In particular, the record shows that the court heard argument regarding Sensenbach's age and limited criminal history and took those factors into consideration in crafting the sentences. Accordingly, we cannot say that the district court abused its discretion in sentencing Sensenbach.

Although neither party has assigned it as error, we note that the court's written sentencing pronouncement conflicts with the verbal sentencing order issued at the hearing. In particular, the written sentencing order purports to impose "probation as to *each* count to be served concurrently with each other" in addition to the 30 days' incarceration for first-degree trespass. (Emphasis supplied.) In other words, the written sentence appears to impose three concurrent terms of probation, one for each count. This sentence would exceed the minimum allowable sentence of a $100 fine for possession of drug paraphernalia, an infraction. However, when there is a conflict between the record of a judgment and the verbatim record of the proceedings in open court, the latter prevails. *State v. Lantz*, 21 Neb. App. 679, 842 N.W.2d 216 (2014). Therefore, to the extent the written sentencing order in this case is inconsistent with the verbatim record of the sentence at the hearing, the latter governs. The court orally sentenced Sensenbach to 18 months' probation for possession of methamphetamine and criminal trespass only, then ordered no fine for possession of drug paraphernalia and 30 days' incarceration for criminal trespass. The verbatim record recites a proper sentence and governs Sensenbach's punishment in this case.

## CONCLUSION

We conclude that Sensenbach lacks standing to challenge the search of the residence in which methamphetamine and drug paraphernalia was found and that she has no privacy interest in the purse she abandoned that contained the incriminating pieces of evidence. Furthermore, we conclude that Sensenbach did not receive excessive sentences. Accordingly, we affirm Sensenbach's convictions and sentences for possession of methamphetamine, possession of drug paraphernalia, and criminal trespass.

AFFIRMED.